1998 SD 40

**Donald RAY and Levena Ray, Plaintiffs and Appellants,**

v.

**Harold DOWNES, John Wieczorek and Phillip J. Waldner, Defendants and Appellees.**

No. 20100.

Supreme Court of South Dakota.

Argued Jan. 14, 1998.

Decided April 22, 1998.

Lee C. "Kit" McCahren of Olinger, Lovald, Robbennolt & McCahren, Pierre, for plaintiffs and appellants.

Larry M. VonWald of Truhe, Beardsley, Jensen, Helmers & VonWald, Rapid City, for appellee Harold Downes.

Gene R. Bushnell of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for appellees John Wieczorek & Phillip J. Waldner.

GILBERTSON, Justice.

[¶ 1] On October 16, 1995 Donald Ray (Ray) was injured in a farm accident when a semi-tractor/trailer rolled over his legs while he was attempting to position an auger under a trailer to unload crops into a large storage bin. Ray then brought a negligence action against his employer, the owner of the farm. He also sued the custom harvester hired by his employer and the custom harvester's driver. Ray's wife, Levena Ray, joined in the suit by submitting a loss of consortium claim. The trial court granted defendants' motion for summary judgment after finding, as a matter of law, that Ray had assumed the risk of his injuries. Ray appeals. We affirm as to his employer, Downes, and reverse as to the custom harvester, Wieczorek and his employee, Waldner.

## FACTS AND PROCEDURE

[¶ 2] Harold Downes (Downes), the owner of a farm near Pierre, South Dakota, hired Ray in May of 1995 as a farm laborer. Ray was 39 years old at the time and had many years of farm experience. As the fall 1995 harvest approached, Downes hired a custom harvester, John Wieczorek, to harvest his soybeans and corn. Wieczorek then assigned one of his employees to combine the fields and another, Phillip Waldner (Waldner), to drive a large 18–wheeled semi-tractor/trailer (semi) from the fields to the storage bins on Downes' farm and unload the crops into the bins. Wieczorek's two employees spent approximately one week harvesting soybeans. Ray was not directed by Downes to assist the harvesters but observed Waldner unloading the crops from the semi into the bins during the previous day's harvesting. During this process Waldner would drive the semi close to the bin, get out of the semi and position a swing-type auger directly underneath the openings in the bottom of the trailer. The crops would then fall through the bottom doors of the trailer into the auger to be transported into the bins.

[¶ 3] On October 16, 1995, it became apparent that the ground near one of the bins was too high to allow sufficient clearance to get the auger under the semi trailer. Downes asked Ray to use a front-end loader to scrape smooth the ground near one of the bins so that the auger could be positioned. Downes did not direct Ray to assist Waldner in the actual unloading of the corn. After Ray scraped the ground, he volunteered to help Waldner position the auger under the trailer. Ray and Waldner agreed that Waldner would drive the truck and Ray would shove the auger underneath the trailer while the truck was moving. Ray would use hand signals and then "holler" for Waldner to stop when the auger was in place.

[¶ 4] As Waldner was entering the truck Ray positioned himself three to four feet in front of the protruding rear set of wheels on the trailer. After the auger was in position Ray "hollered" for Waldner to stop. Either Ray did not signal or Waldner did not see Ray's signals or hear Ray "holler" and the wheels of the trailer caught Ray's left foot and ran over his left leg.[1] Downes was nearby and was alerted to the scene when he heard Ray urgently scream for Waldner to back up. Downes found Ray pinned under the trailer's wheels, got Waldner's attention, who then drove the trailer off of Ray.

[¶ 5] Ray brought a personal injury suit against Waldner and Waldner's employer Wieczorek (under respondeat superior principles). Ray also alleged that Downes had maintained an unsafe workplace because the noise from the grain bin dryers prevented

---

1. The location was fairly noisy at the time because the engines of the semi and a tractor, which was used to power the auger, were running in addition to the grain bin dryers. Ray was aware that some of the truck's windows were rolled up prior to the accident.

Waldner from hearing Ray's shouting to stop. Ray's wife, Levena, also filed a claim for loss of consortium. Downes brought a cross-claim against Waldner and Wieczorek. The circuit court granted summary judgment in favor of all defendants on the basis that Ray had assumed the risk of his injury based on his own admissions. The Rays appeal.

## STANDARD OF REVIEW

[¶ 6] We consider the appropriateness of summary judgment by looking to SDCL 15–6–56(c): "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." *Id.* (reproduced in part); *Ward v. Lange,* 1996 SD 113, ¶ 10, 553 N.W.2d 246, 249. We will affirm the grant of summary judgment "only when the legal questions have been correctly decided and there is no genuine issue of material fact." *Goepfert v. Filler,* 1997 SD 56, ¶ 4, 563 N.W.2d 140, 142 (citations omitted). Since the burden of proof rests upon the moving party, the "evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Id.* (quoting *Rumpza v. Larsen,* 1996 SD 87, ¶ 9, 551 N.W.2d 810, 812 (citations omitted)). We will affirm the circuit court if there exists any legal basis to support its ruling. *Petersen v. Dacy,* 1996 SD 72, ¶ 5, 550 N.W.2d 91, 92 (citations omitted).

## ANALYSIS AND DECISION

[¶ 7] **1. Whether summary judgment in favor of Downes was proper.**

[¶ 8] Ray's complaint contains an allegation that Downes was "negligent in his failure to provide a proper and safe work place for his employees." Ray has appealed the grant of summary judgment in favor of Downes. Ray, however, has failed to brief this issue and therefore we need not consider

it because "[a]n assignment of error not briefed and argued is deemed abandoned." *State v. Macy,* 403 N.W.2d 743, 745 (S.D. 1987) (citing *Graham v. State,* 328 N.W.2d 254 (S.D.1982)).

[¶ 9] **2. Whether summary judgment in favor of Waldner and Wieczorek was proper.**

[¶ 10] Although assumption of the risk is generally a jury issue, this Court has occasionally held summary judgment appropriate in those rare cases "where the essential elements are conclusively established that the plaintiff may be charged with assumption of the risk as a matter of law." *Goepfert,* 1997 SD 56 at ¶ 7, 563 N.W.2d at 142 (citation omitted). We examine the affirmative defense of assumption of the risk with the facts viewed in a light most favorable to Ray. This question is reviewed under the *de novo* standard. *Boever v. South Dakota Bd. of Accountancy,* 526 N.W.2d 747, 749 (S.D. 1995).

[¶ 11] Assumption of the risk is composed of three elements. It must be shown that Ray: (1) had actual or constructive knowledge of the risk; (2) appreciated its character; and (3) voluntarily accepted the risk, with the time, knowledge, and experience to make an intelligent choice. *Mack v. Kranz Farms, Inc.,* 1996 SD 63, ¶ 9, 548 N.W.2d 812, 814 (citation omitted). We have held that the failure to establish any of these elements will preclude summary judgment. *Westover v. East River Elec. Power Coop., Inc.,* 488 N.W.2d 892 (S.D.1992). At the pretrial hearing which addressed the motion for summary judgment, the circuit court held:

[I]t's this court's reluctant view that this is one of those rare cases where [Ray's] own testimony establishes as a matter of law assumption of the risk. I don't believe there can be any reasonable dispute that when the deposition and the depositions of the other people are read together, even with the supplementary affidavit that was just filed by [Ray], I don't believe that

reasonable people can disagree that the first two elements of the assumption of the risk doctrine were clearly satisfied and [Ray's] testimony ... in his deposition clearly establishes the voluntariness and the availability of reasonable alternatives.

### [¶ 12] a. Actual or Constructive Knowledge of the Risk

[¶ 13] Generally, both knowledge and appreciation of danger are jury questions. However, "[W]here it is clear that any person in [plaintiff's] position must have understood the danger, the issue may be decided by the court." W. Page Keeton Et Al., *Prosser and Keeton on the Law of Torts* § 68, at 481 (5thed 1984). Waldner argues that "[r]easonable men could not differ that [Ray] had actual knowledge of the risk" of being run over by the rear wheels. *Mack,* 1996 SD 63 at ¶ 11, 548 N.W.2d at 814. Waldner cites Ray's deposition testimony to support his argument that Ray had *actual* knowledge of the risk of danger involved at the time he positioned himself near the rear wheels in his attempt to push the auger underneath the moving semi:

Q: You knew that the wheels on the rear of the semi-trailer extended out beyond the sides of the trailer?

A: I knew they extended out, yes.

Q: You could see them because they were a short distance behind you, weren't they?

A: Yes.

Q: In fact, they would have been less than three feet behind you?

A: Three or four, yes.

Q: And you knew that as the truck was being driven forward, that those wheels were getting closer and closer to you?

A: Yes.

Q: And you knew that if you didn't move, that the wheels on that trailer would drive over your leg?

A: Yes, I knew it. But if he would have stopped when I motioned for him to stop, he wouldn't have got me.

Q: But you knew you were in a position of danger?

A: Yes. There is danger anywhere on the farm.

Q: And you voluntarily put yourself in that position of danger, didn't you?

A: Yes, I guess I did.

Q: And you knew that you were taking the risk of injuring your legs or even your hip, as ultimately happened?

A: Yes.

(Emphasis added). "Risk is intrinsic to some acts." *Goepfert,* 1997 SD 56 at ¶ 8, 563 N.W.2d 140, 143. However this intrinsic risk is not unlimited. Certainly, Ray put himself in harm's way by standing in a position to be run over. He frankly admitted as much. Nonetheless, he did not consent to relieve the driver of his subsequent duty to act with reasonable care. In the words of Prosser, "This is a distinction which has baffled a great many law students, some judges, and unhappily a few very learned legal writers." Prosser & Keeton, *The Law of Torts* § 68, at 485.

It is here that there is the greatest misapprehension and confusion as to assumption of risk, and its most frequent misapplication. It is not true that in any case where the plaintiff voluntarily encounters a known danger he necessarily consents to any future negligence of the defendant. A pedestrian who walks across the street in the middle of a block, through a stream of traffic traveling at excessive speed, cannot by any stretch of the imagination be found to consent that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall. This is contributory negligence pure and simple; it is not assumption of the risk. And if A leaves an automobile stopped at night on the traveled portion of the highway, and his passenger remains sitting in it, it can readily be found that there is consent to the prior negligence of A, whose control over the risk has terminated, but not to the subsequent neg-

ligence of B, who thereafter runs into the car from the rear.

*Id.*

[¶ 14] Looking at the evidence in a light most favorable to Ray, as we must when reviewing summary judgments, Ray and Waldner had agreed upon certain "signals." According to Ray, Waldner so disregarded their understanding that he did not even realize he had run over Ray until Downes intervened. Nothing in the record even suggests that Ray anticipated Waldner would disregard his signals when moving the truck. Ray's awareness of danger was not consent to relieve Waldner of his duty of care. Not every acceptance of known danger may reasonably be interpreted as evidence of such consent. Prosser & Keeton, *supra* at 490. "[A]lthough one may assume the risk of the negligence of another if he is fully informed of such negligence, one is not, under the doctrine of assumption of risk, bound to anticipate the negligent conduct of others." *Garcia v. City of South Tucson,* 131 Ariz. 315, 640 P.2d 1117, 1121 (Ct.App.1981) *rev'd on other grounds, Garcia v. City of South Tucson,* 135 Ariz. 604, 663 P.2d 596 (Ct.App. 1983).

[¶ 15] Consistent with *Westover,* this is not a case where a "party may have actual appreciation of a risk or a party can be deemed to appreciate a risk if it is the type of risk that no adult of average intelligence can deny." 488 N.W.2d at 901. In both cases the plaintiff admittedly was familiar with the dangers of the workplace but there remained a question of fact as to whether that familiarity extended to dangers which were not in the norm and were unexpected.

[¶ 16] As Waldner fails to convince us the record supports his contention on the first factor of assumption of the risk, this failure to establish any one of the above three criteria is "fatal to this defense" as a basis for upholding a summary judgment. *Westover, supra.* As such we need not review the second and third factors.

[¶ 17] We affirm as to the employer Downes and reverse and remand for trial as to Waldner and his employer, Wieczorek. In so doing, our disposition preserves the opportunity for Waldner and Wieczorek to pursue traditional tort defenses such as assumption of the risk at trial.

[¶ 18] SABERS, AMUNDSON and KONENKAMP, JJ., concur.

[¶ 19] MILLER, C.J., concurs in part and dissents in part.

MILLER, Chief Justice (concurring in part and dissenting in part).

[¶ 20] I would affirm the circuit court's grant of summary judgment in its entirety.

[¶ 21] I specifically join the majority writing as it relates to Issue 1. Although I agree with much of the analysis of the majority writing on Issue 2, I disagree with its application of the law of assumption of the risk.

[¶ 22] Specifically, I agree with the majority's reliance on the *Mack* decision cited in ¶¶ 11 and 13. Under our settled law, as set forth by the majority in ¶ 11, there are three elements to an assumption of the risk analysis. In its analysis of the issue, the majority does not reach the second and third elements. I respectfully suggest that its rationale and application of the law are flawed.

[¶ 23] The majority grounds its holding, and ceases any further analysis of assumption of the risk, principally relying on secondary authority (a Prosser and Keeton hornbook) and an old decision by the intermediate court of appeals in Arizona. That simply is not an adequate analysis. I will next examine the three elements necessary to a proper assumption of the risk analysis.

[¶ 24] **A. Actual or Constructive Knowledge of the Risk.**

[¶ 25] A court must first look to see if a plaintiff had actual or constructive knowledge of the risk. Unlike the majority, I agree with Waldner and would hold that Ray's deposition clearly established that he had *actual* knowledge of the danger involved at

the time he positioned himself near the rear wheels of the truck, as that testimony is fully set forth by the majority in ¶ 13, *supra*. Further, the majority's citation to *Goepfert* is relevant, but not properly applied. I assert that standing three feet away from moving truck tires attached to an 80,000–pound semi-trailer falls within the category of being a risk "intrinsic" to the act, according to the holding in *Goepfert*, 1997 SD 56, ¶ 8, 563 N.W.2d at 143.

[¶ 26] **B. Appreciation of the Character of the Risk.**

[¶ 27] A court must next examine the appreciation of the character of the risk. It is important to observe that although Ray had only worked for Downes for a short time, he did have considerable farm experience. Additionally, he had approximately ten years' experience driving and maneuvering heavy trucks with fellow co-workers in close proximity. Ray admitted that any adult person of average intelligence would understand the danger of getting in front of the wheels of a truck while it was moving.

Q: You didn't need to have anybody warn you or tell you you could get hurt if you got your feet and legs in front of the wheels on a semi-trailer, did you?

A: No. I[Ray] knew it was unsafe to be there.

*See Bell v. East River Elec. Power Coop., Inc.*, 535 N.W.2d 750, 754 (S.D.1995) (concluding a plaintiff will be held to have appreciated the danger undertaken if it was "a risk that no adult person of average intelligence can deny") (citation and internal quotations omitted). " 'One may not close his eyes to obvious dangers, and cannot recover where he was in possession of facts from which he would be legally charged with appreciation of the danger.' " *Goepfert*, 1997 SD 56, ¶ 9, 563 N.W.2d at 143 (citing *Herod v. Grant*, 262 So.2d 781, 783 (Miss.1972) (quoting 57 Am. Jur.2d *Negligence* § 282 (1971))).

[¶ 28] **C. Voluntary Acceptance of the Risk.**

[¶ 29] Finally, a plaintiff will be deemed to have assumed the risk if it can be said that the risk was voluntarily accepted, having had the time, knowledge, and experience to make an intelligent choice.

(1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk.

(2) The plaintiff's acceptance of a risk is not voluntary if the defendant's tortious conduct has left him no reasonable alternative course of conduct in order to

(a) avert harm to himself or another, or

(b) exercise or protect a right or privilege of which the defendant has no right to deprive him.

*Mack*, 1996 SD 63, ¶ 15, 548 N.W.2d at 814–15 (citing with approval the Restatement (Second) of Torts § 496E (1965)).

[¶ 30] As evidenced by the following testimony, Ray has conceded that he voluntarily put himself in a position of danger:

Q: And you voluntarily put yourself in that position of danger, didn't you?

A: Yes, I guess I did.

All individuals have a duty of care for their own safety. *See Goepfert*, 1997 SD 56, ¶ 11, 563 N.W.2d at 143.

[¶ 31] Ray has testified that there were other, reasonable, alternatives available to him:

Q: You would agree that the accident would not have happened had you used other alternatives that were available to you?

A: Yes, I believe so.

Q: And one of the alternatives that was available to you, would have been to have the driver stop the truck, shut it off and get out; right?

A: Yes.

Q: And then the driver could have positioned the auger under the belly dump?

A: Yes.

Q: And that would have been a reasonable alternative to the one that you actually used wouldn't it?

A: Yes.

Ray admits that he was not compelled by Waldner to use the particular method he did. Rather, Ray felt the method of moving the auger that he employed was more convenient.[2] In utilizing this method, Ray was acting under no compulsion of circumstances created by Waldner. The Restatement (Second) of Torts § 496E cmt. b provides in part:

> The plaintiff's acceptance of the risk is to be regarded as voluntary even though he is acting under the compulsion of circumstances, not created by the tortious conduct of the defendant, which have left him no reasonable alternative. Where the defendant is under no independent duty to the plaintiff, and the plaintiff finds himself confronted by a choice of risks, or is driven by his own necessities to accept a danger, the situation is not to be charged against the defendant.

[¶ 32] Another fact ignored by the majority is that after Ray's deposition, and just prior to the hearing on defendants' motions for summary judgment, Ray purportedly submitted an affidavit wherein he attempted to claim that there existed no reasonable alternative to the procedure he used in positioning the auger. In previous cases, we have taken a dim view of eleventh hour attempts by affidavit to salvage a case from summary judgment by contradicting the same party's previous sworn testimony. *See Taggart v. Ford Motor Credit Co.*, 462 N.W.2d 493, 503 (S.D. 1990). However, here we need not even go that far as Ray failed to file this affidavit and thus it is not part of the appeal record. As

such its contents are not properly before us.[3] Thus, Ray is confined to the contents of his deposition testimony and "cannot claim a version of the facts more favorable to his position than he gave in his own testimony." *Mack*, 1996 SD 63, ¶ 10, 548 N.W.2d at 814; *see also Swee v. Myrl & Roy's Paving, Inc.*, 283 N.W.2d 570, 572 (S.D.1979).

[¶ 33] Ray's reliance on *Stenholtz v. Modica*, 264 N.W.2d 514 (S.D.1978), is misplaced. In *Stenholtz*, the plaintiff set up a scaffold underneath a canopy. The canopy was in poor condition and the plaintiff was aware of it. However, the owner/defendant assured the plaintiff the canopy was safe. The canopy collapsed, injuring the plaintiff. This Court held that plaintiff's knowledge of a potential danger and his appreciation of the risk were not established as they were offset " 'where the injured person surrenders his better judgment as a result of an assurance of safety' " of the canopy by the defendant. *Id.* at 518 (citing *McConnell v. Pic–Walsh Freight Co.*, 432 S.W.2d 292, 298 (Mo.1968)). Here, there were no such assurances by any of the defendants, only Ray's repeated admissions that he was aware of the dangerousness of the situation he had voluntarily placed himself in.

[¶ 34] Ray also contends that under *Nepstad v. Randall*, 82 S.D. 615, 152 N.W.2d 383 (1967), he should not have been held to have assumed the risk because of Waldner's alleged negligence in driving the semi. In other words, Ray argues that Waldner's alleged negligence was the proximate cause of his injury. Whether one adopts the majority or minority position in *Nepstad*,[4] the present

---

**2.** There is no evidence in the record indicating that either Downes or Waldner gave Ray the impression that they were in a hurry. Setting up the auger took several minutes and it cannot be said that Ray did not have a reasonable opportunity to reconsider his approach. *See Berg v. Sukup Mfg. Co.*, 355 N.W.2d 833, 835 (S.D.1984) (in considering available alternatives, "[r]easonableness refers to whether the plaintiff had a reasonable opportunity to elect whether or not to subject himself to the danger."). Safer alternatives should not be held unreasonable merely because they entail duplicative effort.

**3.** The ultimate responsibility for presenting an adequate record on appeal falls on the appellant.

*Baltodano v. North Cent. Health Servs., Inc.*, 508 N.W.2d 892, 894 (S.D.1993). While the affidavit is attached to Ray's appellate brief, under SDCL 15–26A–53 briefs submitted to this Court are not part of the "record on appeal." Similar to cases where the appellate record contains no transcript, "the record on appeal is confined to those pleadings and papers transmitted from the circuit court." *Baltodano*, 508 N.W.2d at 894 (citations omitted.)

**4.** *Nepstad's* treatment of the assumption of the risk issue consists of one paragraph and fails to use our three criteria analysis.

facts are clearly distinguishable. Ray has admitted he knew that it is difficult to move large vehicles short distances and that he was aware he might be injured. Simply put, Waldner's actions were not unforeseeable or unexpected as was the defendant's negligence of the unexpected accelerated turn in *Nepstad.*[5] There is no allegation that Waldner suddenly turned or accelerated as in *Nepstad.* Upon Ray's command, Waldner drove the vehicle straight ahead only three or four feet. While the plaintiff in *Nepstad* did not anticipate a quick accelerated turn, Ray admits "I knew it was unsafe to be there" and that he was taking the risk of injuring his legs or hip.

[¶ 35] Ray argues that Waldner failed to utilize his mirrors properly and failed to see his hand signals. Yet before Waldner entered the semi, Ray knew that he would be required to simultaneously use his hands to move the auger and signal Waldner. Furthermore, before the accident Ray knew that some of the windows were up in the semi and that there was a significant amount of noise which could have prevented Waldner from hearing him shout to stop. Where a plaintiff has impliedly consented to the negligence, and agrees to take his own chances, "[t]he legal result is that the defendant is simply relieved of the duty which would otherwise exist." W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 68, at 481 (5th ed. 1984).

[¶ 36] Since, I agree with the trial court that there exists no genuine issue of material fact as to whether Ray assumed the risk of his injury, I would affirm.

---

5. Ray testified at his deposition:

> Q: His truck didn't make any turn or anything did it?
> A: No.
> Q: His truck just pulled ahead, what you apparently instructed the driver to do, is that correct?
> A: Yes.
> Q: Right. But the truck didn't move to the side at all?
> A: No.
> Q: The truck didn't go to the left?
> A: No.
> Q: The only thing his truck did was go straight ahead?
> A: Go straight ahead.