#24460-rev & rem-DG

**2007 SD 115**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

JEFFREY STONE,                                          Plaintiff and Appellant,

v.

VON EYE FARMS, DANIEL VON EYE, SR.,
INDIVIDUALLY, AND JAMIE VON EYE,
INDIVIDUALLY,                                          Defendants and Appellees,

DANIEL VON EYE, JR., INDIVIDUALLY,          Defendant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
MINER COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE DAVID R. GIENAPP
Judge

\* \* \* \*

LAURA KOOB
BRIAN L. RADKE of
Radke Law Offices, PC
Sioux Falls, South Dakota                    Attorneys for plaintiff
                                             and appellant.


TIMOTHY A. CLAUSEN of
Klass Law Firm
Sioux City, Iowa                             Attorneys for defendants
                                             and appellees.

\* \* \* \*

CONSIDERED ON BRIEFS
ON AUGUST 27, 2007

OPINION FILED **11/07/07**

#24460

GILBERTSON, Chief Justice

[¶1.]     On July 19, 2006, in the South Dakota Third Judicial Circuit, Jeffrey Stone (Stone) filed a complaint against Von Eye Farms, Daniel Von Eye, Sr., Daniel Von Eye, Jr., and Jamie Von Eye (collectively "Von Eyes") arising from personal injuries that he received in a farm accident. On September 1, 2006, Von Eyes filed a motion for summary judgment. Stone amended his complaint on November 15, 2006. On December 18, 2006, the circuit court heard the motion. On January 18, 2007, the circuit court issued its letter opinion granting Von Eyes' motion for summary judgment. Judgment for Von Eyes was entered on January 25, 2007. We reverse and remand.

<h2 style="text-align:center">FACTS AND PROCEDURE</h2>

[¶2.]     Von Eyes are engaged in family farming operations in eastern South Dakota. At the time of the incident giving rise to this claim, Stone had been employed by Von Eyes as a farm hand for no less than one year. On November 25, 2005, Stone began work at round 9:30 a.m. At around 12:00 a.m. on November 26, 2005, Stone was returning from the fields and planning to go home after the day's harvesting activities. Stone caught a ride in from the field with Jim Carroll (Carroll). Carroll was operating a Case-IH 7140 tractor and pulling a grain wagon loaded with corn. Carroll was heading to a site where the harvested corn was being transferred from grain wagons to semi-tractor-trailers.

[¶3.]     When Carroll arrived at the transfer site around midnight, he pulled along side a semi-tractor-trailer in preparation to begin offloading corn. Stone climbed down off the tractor and spoke to Casey Kneebone (Kneebone), who was driving a semi-tractor-trailer rig. After briefly speaking to Stone, Kneebone

climbed up the steps of the tractor to talk to Carroll. Unbeknownst to Carroll, Stone remained on the ground standing behind the left, front tire of the Case-IH tractor. Carroll looked behind the tractor and then began to back up, knocking Stone to the ground and driving over his ankle and leg.[1] Carroll had moved the tractor about three feet when he heard Stone yell, but by that time Stone had suffered severe physical injury.

[¶4.]        Stone's July 19, 2006 complaint alleged that Carroll was negligent in the operation of the Case-IH tractor; that said negligence was proximate cause of Stone's injury; and that Von Eyes were liable on a theory of *respondeat superior*. After Von Eyes moved for summary judgment, Stone amended his complaint on November 15, 2006, alleging that Von Eyes were negligent by not providing a safe work place. Stone's allegation was based on claims that Von Eyes' employees had not received proper training, were not properly supervised, and were required to work under unreasonable working conditions.

[¶5.]        On December 18, 2006, the circuit court heard Von Eyes' motion and thereafter supplemental materials were filed by the parties. On January 18, 2007, the circuit court issued its letter opinion granting summary judgment for Von Eyes.

[¶6.]        Stone raises three issues on appeal:

> 1.        Whether the circuit court erred by not submitting to the jury the question of whether Von Eyes were negligent in the nature of the workplace they provided for their employees.

---

1.        Carroll claims that he also hollered twice that he was going to back up. However, Stone denies hearing Carroll's alleged warning.

2.  Whether the circuit court erred by granting summary judgment based on assumption of the risk, barring recovery for Stone as a matter of law.

3.  Whether the circuit court erred by granting summary judgment based on contributory negligence, barring recovery for Stone as a matter of law.

## STANDARD OF REVIEW

Summary judgment is properly granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. We will affirm the trial court's grant or denial of a motion for summary judgment when no genuine issues of material fact exist, and the legal questions have been correctly decided. We review the circuit court's conclusions of law under the de novo standard. However, we view all evidence and favorable inferences from that evidence in a light most favorable to the nonmoving party.

A-G-E Corp. v. State, 2006 SD 66, ¶13, 719 NW2d 780, 785 (internal citations and quotations omitted). "Summary judgment is proper in negligence cases if no duty exists as a matter of law." Bordeaux v. Shannon County Schools, 2005 SD 117, ¶11, 707 NW2d 123, 126 (citation omitted).

Negligence is the breach of a duty owed to another, the proximate cause of which results in an injury. This Court has repeatedly stated that questions of negligence, contributory negligence and assumption of the risk are for the jury in all but the rarest of cases so long as there is evidence to support the issues. It is only when reasonable men can draw but one conclusion from facts and inferences that they become a matter of law and this rarely occurs.

Pierce v. City of Belle Fourche, 2001 SD 41, ¶22, 624 NW2d 353, 356-57 (alteration and internal citations and quotations omitted).

## ANALYSIS AND DECISION

[¶7.] **1. Whether the circuit court erred by not submitting to the jury the question of whether Von Eyes were negligent in the nature of the workplace they provided for their employees.**

[¶8.] Stone alleged that Von Eyes had a duty to provide a reasonably safe place to work and that they breached this duty by not providing adequate training and supervision for their employees. Stone further alleged that Von Eyes maintained an unsafe working environment by overworking their employees. Von Eyes deny Stone's allegations. The basis underlying their respective positions is contained within the pleadings, answers, admissions, affidavits and discovery contained in the record.

[¶9.] Employers have a nondelegable duty to provide their employees with reasonably safe places to work. Smith v. Community Co-op. Ass'n of Murdo, 87 SD 440, 444, 209 NW2d 891, 893 (1973) (citing Stoner v. Eggers, 77 SD 395, 92 NW2d 528 (1958)). Inherent to this duty is an obligation that employers provide employees with proper training and supervision. *Id.* at 444-45, 209 NW2d at 893 (citing Restatement, Second, § 492 *et seq.*; 56 CJS Master and Servant § 186).

[¶10.] Von Eyes submitted that they were not unlike other family farming operations in South Dakota with respect to the amount and kind of training they provided for their employees. According to Von Eyes, on-the-job training was provided; the extent of which was determined by the complexity of the tasks and or the equipment used therein. Von Eyes further contended that Carroll was an experienced farm laborer accustomed to operating many different types of farm machinery including various kinds of tractors, and specifically the Case-IH 7140.

[¶11.]     Von Eyes stated that like other farming operations, they did not supervise their employees at all times. Rather, they stated that they had customarily hired competent employees, who after training, were expected to operate equipment in a safe manner without the need for immediate supervision. Nevertheless, they indicated that employees were closely scrutinized when the task required immediate supervision.

[¶12.]     Stone alleged that on-the-job training and the supervision provided by Von Eyes was less than adequate. He also alleged that no safety training had been provided and that he was given minimal training in the tasks to which he was assigned and for the equipment employed in carrying out the tasks. In addition, he averred that for post-training, Van Eyes provided virtually no supervision, including on the day that he was injured.

[¶13.]     Stone argues that the inadequacy of the training and supervision that Von Eyes provided their employees was evident in the manner in which Carroll operated the Case-IH tractor at the time of Stone's injury. Stone avers that the fact Carroll claims to have hollered a warning prior to backing up the tractor is an acknowledgment that Carroll was aware that Stone was near the tractor when he began to back up. Stone argues the fact Carroll then only looked rearward before backing up and moved the tractor while Kneebone was still standing on its steps belies the notion that Carroll was properly trained to operate the tractor. Stone contends that had Carroll received proper training he would have looked in all directions before backing up and that he never would have moved the tractor while another person stood on its steps, allegedly obscuring Carroll's view.

[¶14.]    Stone also alleged that Von Eyes maintained an unsafe work environment by overworking their employees. Stone contends that he had worked a 15-hour day just prior to the accident and that that was consistent with the amount of time he had put in seven days per week during the two months preceding the accident and was further consistent with the amount of time that other employees, including Carroll were working. However, Von Eyes countered these allegations by submitting that while it is customary to work long hours during harvest, no employee was required to work such long hours as to become a safety risk. Further, Von Eyes also stated that employees were advised to take breaks or go home if they became overly tired and that time off to rest was allowed as requested or necessary. In any case, Von Eyes contended that the long hours worked by their employees was not a contributing factor to the accident since Carroll stated that he neither fell asleep at that time nor was inattentive.

[¶15.]    Von Eyes, as a matter of law, had a duty to Stone to provide a reasonably safe workplace with adequate training and supervision. We conclude that the evidence that was submitted to the circuit court and the inferences drawn therefrom, when viewed in a light most favorable to Stone, reveal genuine issues of material fact as to whether Von Eyes breached this duty. Accordingly, evidence and testimony relevant to that question should have been held over for trial and submitted to a jury for determination.

[¶16.]    **2.    Whether the circuit court erred by granting summary judgment based on assumption of the risk, barring recovery for Stone as a matter of law.**

[¶17.]    In their answer filed August 21, 2006, Von Eyes alternatively interposed the affirmative defense of assumption of the risk. In granting Von Eyes'

motion for summary judgment, the circuit court concluded that Stone's conduct constituted assumption of the risk as a matter of law. The circuit court cited our rationale in *Goepfert v. Filler,* 1997 SD 56, 563 NW2d 140 as applicable to the instant case.

[¶18.] The facts of *Goepfert*, are distinguishable from the instant case in that they involved a wrongful death case that arose when a passenger in a moving car, of his own accord, stepped out of the vehicle while it was in motion, thereafter striking his head on the pavement, which ultimately led to his demise. 1997 SD 56, ¶¶2-3, 563 NW2d at 141. Defendant moved for summary judgment, which the circuit court granted concluding that the decedent had assumed the risk as a matter of law therein negating any duty owed him by the defendant operator of the car. *Id*. ¶3, 563 NW2d at 141.

[¶19.] A defendant asserting assumption of the risk must establish three elements: 1) that the plaintiff had actual or constructive knowledge of the risk; 2) that the plaintiff appreciated the character of the risk; and 3) that the plaintiff voluntarily accepted the risk, given the time knowledge, and experience to make an intelligent choice. *Id*. ¶6, 563 NW2d at 142. The failure to establish any one of the three elements negates the defense. *Id*. (citing Westover v. East River Elec. Power Co-op., Inc., 488 NW2d 892, 901 (SD 1992)).

*Actual or Constructive Knowledge of the Risk*

[¶20.] Given the facts in *Goepfert*, we held that "exercising ordinary common sense, reasonable minds [could not] differ on the jeopardy involved in stepping from a moving vehicle." *Id*. ¶8, 563 NW2d at 143 (citations omitted). A similar

determination cannot be arrived at so intuitively from the facts of the instant case. Weighing the circumstances of this case and inferences drawn therefrom in a light most favorable to Stone, it is reasonable to conclude that if he did not hear Carroll's warning, he may never have considered the possibility that the tractor would move while Kneebone remained hanging on outside the cab. Consequently, an issue of material fact remains as to Stone's knowledge, or lack thereof, of the tractor's imminent movement.

### *Appreciated the Character of the Risk*

[¶21.]    We need not consider this element as Von Eye has failed in their burden on the first element. However, we note that the same requirement of a showing of the specificity of the appreciation of the nature of the risk that applies to the first element also applies to the risk's character. *Westover,* 488 NW2d at 901.

### *Voluntary Acceptance of the Risk*

[¶22.]    Once again, there is no necessity that we consider this element. Nevertheless, when it can be shown that the plaintiff had reasonable alternatives to the injury causing conduct, but subjected himself to the risk of harm notwithstanding, this element is established. *Goepfert,* 1997 SD 56, ¶12, 563 NW2d at 144 (citations omitted). Acceptance is not voluntary if another's tortious conduct leaves no reasonable alternative to avert harm or to exercise or protect a right or privilege, which another has no right to deny. *Id.* (citation omitted).

[¶23.]    In *Goepfert*, we concluded that neither the driver's conduct nor that of any of the other passengers was negligent and therefore played no role in the decedent's decision to exit a moving car. *Id.* Since, the decedent had a reasonable

alternative in that he could have stayed seated in the car until it came to a halt, we held that he voluntarily accepted the risk.

[¶24.]    In the instant case, the alternative to Stone remaining in the path of the moving tractor tire was to have stepped out of the way. However, given the suddenness in which the tractor began to move, a fact question remains with respect to Stone's ability to consider that alternative prior to being run over.

[¶25.]    We find that there were questions of material fact that properly should have been considered by a jury, with respect to the issues of Von Eyes' negligence and the affirmative defense of assumption of the risk.[2] Therefore, we conclude that the circuit court erred in granting summary judgment.

---

2.    Since there are issues of material fact for determination on remand, regarding whether Von Eyes were negligent, we do not reach on appeal Issue 3—whether Stone's claim is barred by contributory negligence as a matter of law. However, we think it is again noteworthy to point out the distinction between assumption of the risk and contributory negligence is often confused. Reflecting on this distinction in *Ray v. Downes*:

> "Risk is intrinsic to some acts." *Goepfert,* 1997 SD 56, ¶8, 563 NW2d at 143. However this intrinsic risk is not unlimited. Certainly, Ray put himself in harm's way by standing in a position to be run over. He frankly admitted as much. Nonetheless, he did not consent to relieve the driver of his subsequent duty to act with reasonable care. In the words of Prosser, "This is a distinction which has baffled a great many law students, some judges, and unhappily a few very learned legal writers." Prosser & Keeton, *The Law of Torts* § 68, 485.
>
> > It is here that there is the greatest misapprehension and confusion as to assumption of risk, and its most frequent misapplication. It is not true that in any case where the plaintiff voluntarily encounters a known danger he necessarily consents to any future negligence of the defendant. A pedestrian who walks across the street in the middle of a block, through a stream of

(continued . . .)

#24460

[¶26.]     We hereby reverse and remand for further proceedings consistent with this opinion.

[¶27.]     SABERS, KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

---

(. . . continued)

> traffic traveling at excessive speed, cannot by any stretch of the imagination be found to consent that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall. This is contributory negligence pure and simple; it is not assumption of the risk. And if A leaves an automobile stopped at night on the traveled portion of the highway, and his passenger remains sitting in it, it can readily be found that there is consent to the prior negligence of A, whose control over the risk has terminated, but not to the subsequent negligence of B, who thereafter runs into the car from the rear.

1998 SD 40, ¶13, 576 NW2d 896, 899-900.