#28067-a-JMK
**2018 S.D. 11**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BONITA R. JENSEN, individually
and as the Personal
Representative of the Estate of
RONALD MILTON JENSEN,
Deceased,                                    Plaintiff and Appellee,

     vs.

MENARD, INC.,                                Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
DAVISON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE PATRICK T. SMITH
Judge

* * * *

SCOTT G. HOY
CARLETON R. HOY
JAMES L. HOY of
Hoy Trial Lawyers, Prof. LLC
Sioux Falls, South Dakota

MICHAEL W. STRAIN
Morman Law Firm
Sturgis, South Dakota                        Attorneys for plaintiff and
                                             appellee.


HILARY L. WILLIAMSON
WILLIAM P. FULLER of
Fuller & Williamson, LLP
Sioux Falls, South Dakota                    Attorneys for defendant and
                                             appellant.

* * * *

ARGUED OCTOBER 2, 2017
OPINION FILED **02/07/18**

#28067

KERN, Justice

[¶1.]       Ronald Jensen visited a Menard Inc. (Menards) store in Mitchell,

South Dakota, to purchase plywood sheets.  An employee transported the plywood

on a single-rail cart outside to the back of Ronald's truck.  While loading the sheets

into the vehicle, a strong gust of wind moved the cart and caused the plywood to tip

over.  The plywood fell on Ronald, resulting in severe injuries.  Ronald sued

Menards for negligence, and his wife sued for loss of consortium.  At trial, the

circuit court denied Menards' request for an instruction on assumption of the risk.

The jury returned a verdict in favor of Ronald's wife and estate.  Menards appeals.

We affirm.

## Facts and Procedural History

[¶2.]       On August 1, 2012, Ronald Jensen and Don Farnam, Ronald's brother-

in-law, visited the Menards in Mitchell, South Dakota.  Ronald, a 71-year-old man,

needed plywood to finish a tack room in his barn.  Ronald was still fairly mobile and

physically fit despite suffering a spinal-cord injury in 1977.  As a result of the

injury, Ronald's ability to perform physical tasks diminished considerably, and he

experienced some issues with agility from the waist down.  For example, Ronald

lacked feeling in his feet, and his right leg gave him difficulty while walking,

requiring the use of a cane.  Nevertheless, Farnam described Ronald as an active

individual.

[¶3.]       After purchasing seven four-by-eight sheets of plywood, Ronald drove

his pickup around back to the store's security shack to gain access to the

lumberyard.  Instead of pulling into the bay, Ronald parked the truck parallel to the

south side of the building. Clint Weyand, a Menards employee, observed Ronald and Farnam waiting outside. Without being asked, Weyand took Ronald's invoice and, unable to find an available flat cart, loaded the plywood onto a single-rail cart. Weyand placed the sheets vertically so that they leaned against the rail at an angle. The single-rail cart did not have brakes or locks on the wheels, and Weyand estimated that the sheets altogether weighed at least 300 pounds. Weyand then pushed the cart outside to the rear of the pickup.

[¶4.]      Weyand and Ronald began placing the boards onto the flatbed of the pickup. According to Weyand, Ronald helped tip and guide the boards over the tailgate while Weyand slid them into the back of the pickup. Weyand did not observe Ronald using a cane and did not think Ronald had a disability. Both Weyand and Farnam recall it being windy that day. After loading the first sheet of plywood, a strong, southward gust began moving the cart. Weyand unsuccessfully attempted to stop the cart with his elbow, and the plywood loaded on the cart—unsecured by anything—tipped over. Farnam, who was looking off in the distance, heard someone say "grab it." Turning around, Farnam saw Ronald lose his balance. Falling, Ronald struck his head against either the plywood, the tailgate of the truck, or some other hard surface.

[¶5.]      Ronald, having fallen on top of the plywood, told Farnam that he broke his neck and that he could not move. Another Menards employee came outside to assist. When paramedics arrived, Ronald stated he could not feel his legs. An ambulance took Ronald to the emergency room at Queen of Peace Hospital. Ronald underwent surgery for cervical fractures and dislocations, and the incident left

Ronald a quadriplegic. Additionally, Ronald required a tracheostomy so that he could be placed on a ventilator permanently. In September 2012, Ronald, while still undergoing rehabilitation, was diagnosed with an aggressive type of bladder cancer. Ronald then transferred to a long-term nursing facility in Lincoln, Nebraska, where he lived for several months until he passed away on January 31, 2013.

[¶6.] Before his death, Ronald and his wife Bonita Jensen (Jensen) had sued Menards. They alleged that Weyand acted negligently in handling the plywood and failed to recognize unsafe weather conditions requiring additional safety precautions. Jensen also brought a claim for loss of consortium. Following Ronald's death, Jensen was appointed as personal representative of Ronald's estate (the Estate) and substituted as the plaintiff in Ronald's action.

[¶7.] The case was tried before a jury from October 31, 2016, through November 3, 2016. Jensen's expert witness testified that Menards' safety protocols did not meet the appropriate standard of care and that a double-rail cart would have been safer for loading plywood. Menards raised affirmative defenses, including assumption of the risk and contributory negligence. At the close of evidence, Jensen moved for judgment as a matter of law on both defenses. The court took the issue under advisement. While settling jury instructions the following day, Menards objected to the court's refusal to instruct the jury on assumption of the risk, relying on *Ballard v. Happy Jack's Supper Club*, 425 N.W.2d 385 (S.D. 1988). The court, after hearing argument from the parties, indicated it would submit an instruction on contributory negligence but not assumption of the risk. The court distinguished *Ballard*, reasoning that in *Ballard*,

"you had an unattended sidewalk with a curb that someone tripped on that was, allegedly, negligently maintained in some fashion," whereas Jensen's and the Estate's claim arose out of "affirmative actions of an employee, which is more in flux than a stationary curb[.]"

[¶8.] The jury returned a verdict in favor of Jensen and the Estate, awarding $2,295,971.97. Menards appeals, raising two issues for our review, which we consolidate as: Whether the circuit court erred by failing to instruct the jury on assumption of the risk.

## Analysis and Decision

[¶9.] Before we examine Menards' claim that the court erred in failing to instruct the jury on assumption of the risk, we address its claim that the circuit court granted Jensen's motion for judgment as a matter of law on assumption of the risk. Jensen argues the circuit court never actually ruled on her motion. According to Jensen, the court only resolved the question whether assumption of the risk should be included in the jury instructions. Thus, in Jensen's view, Menards failed to ensure that a record was made on Jensen's motion and therefore failed to preserve the issue for appeal. *See Jack Rabbit Lines, Inc. v. Neoplan Coach Sales, Inc.*, 1996 S.D. 80, ¶ 13, 551 N.W.2d 18, 21.

[¶10.] In response, Menards cites the trial transcript, quoting the circuit court after Jensen made her motion as saying: "I think that we can flush [sic] those issues out more while we discuss instructions and, then, you can remake those motions when we settle instructions." Menards claims the court, while in chambers, granted Jensen's motion for judgment as a matter of law on assumption of the risk

but denied it as to contributory negligence. The following day, the court stated that "[c]ounsel and the [c]ourt met yesterday afternoon, informally, and went through all of the instructions and I've given instructions to the parties as to how I want them to make their record." The court then invited the parties to make their record. After Menards objected to a jury instruction for its failure to include assumption of the risk, the court noted that it "heard arguments off the record on that issue."

[¶11.] However, contrary to Menards' claim that these statements indicate the court ruled on Jensen's motion, the transcript does not suggest the court ever formally granted or denied judgment as a matter of law. Indeed, the exchange indicates only that the court heard argument about whether assumption of the risk should be included as a jury instruction. Because the record does not reflect a ruling on the motion for judgment as a matter of law, the issue was not preserved for appeal. *See Baltodano v. N. Cent. Health Servs., Inc.*, 508 N.W.2d 892, 895 (S.D. 1993).

[¶12.] With reference to Menards' argument that the circuit court erred by failing to instruct the jury on assumption of the risk, Menards argues that the record contained sufficient evidence to support the defense and that the instruction should have been submitted to the jury. According to Menards, there was "compelling evidence in the record that Ron participated in loading the plywood on a windy day without the use of his cane, thereby knowingly and voluntarily exposing himself to the dangers and risks associated with that conduct."

[¶13.] "We review a court's decision to deny a requested jury instruction for an abuse of discretion." *Young v. Oury*, 2013 S.D. 7, ¶ 31, 827 N.W.2d 561, 569.

"When an issue is supported by the evidence and an instruction correctly setting forth the law is requested, the court should so instruct the jury." *Id.* "It is well-settled law in this jurisdiction that failure to give a requested jury instruction setting forth the applicable law constitutes not only error, but prejudicial error." *Sommervold v. Grevlos*, 518 N.W.2d 733, 745 (S.D. 1994) (Miller, C.J., dissenting). "But a court is not required to instruct the jury on issues lacking evidentiary support." *Young*, 2013 S.D. 7, ¶ 31, 827 N.W.2d at 569.

[¶14.] Assumption of the risk requires that the person: "(1) had actual or constructive knowledge of the risk; (2) appreciated its character; and (3) voluntarily accepted the risk, with the time, knowledge, and experience to make an intelligent choice." *Duda v. Phatty McGees, Inc.*, 2008 S.D. 115, ¶ 13, 758 N.W.2d 754, 758. "Questions of negligence, contributory negligence, and assumption of the risk are for the jury in all but the rarest of cases so long as there is evidence to support the issues." *Stensland v. Harding Cty.*, 2015 S.D. 91, ¶ 14, 872 N.W.2d 92, 96-97. "[W]e review de novo the question whether 'there is no legally sufficient evidentiary basis for a reasonable jury to find'" on the issue whether a plaintiff assumed the risk. *Magner v. Brinkman*, 2016 S.D. 50, ¶ 14, 883 N.W.2d 74, 81 (quoting SDCL 15-6-50(a)).

[¶15.] Menards contends the following evidence supported an assumption of the risk defense: Ronald knew it was windy; he was susceptible to falls; he

nevertheless chose to help Weyand load the truck;[1] he did so without his cane;[2] and Ronald could have stood outside the loading area completely, away from the cart and the truck. "[A]ssumption of the risk imports a knowing and voluntary self exposure to a known danger. Plaintiffs cannot assume risks of activities or conditions of which they are ignorant." *Duda*, 2008 S.D. 115, ¶ 12, 758 N.W.2d at 758. "A person is deemed to have appreciated the risk 'if it is the type of risk that no adult of average intelligence can deny.'" *Id.* ¶ 13 (quoting *Ray v. Downes*, 1998 S.D. 40, ¶ 15, 576 N.W.2d 896, 900). Voluntary acceptance of the risk requires "time, knowledge, and experience to make an intelligent choice." *Goepfert v. Filler*, 1997 S.D. 56, ¶ 10, 563 N.W.2d 140, 143. "Acceptance is not voluntary if another's tortious conduct leaves no reasonable alternative to avert harm . . . ." *Id.* ¶ 12, 563 N.W.2d at 144. Evidence that the plaintiff undertook the injury-causing conduct despite the choice of a reasonable alternative can also establish voluntary acceptance of the risk. *Stone v. Von Eye Farms*, 2007 S.D. 115, ¶ 22, 741 N.W.2d 767, 772.

[¶16.] Jensen draws our attention to a contradiction between Menards' presentation of evidence at trial and its arguments on appeal. At trial, Menards' witnesses testified to the effect that even a trained employee would not anticipate the strength of a gust capable of knocking down plywood on a single-rail cart. To

---

1. Jensen contends there is no evidence, however, that Ronald helped load the second board.

2. Farnam testified that he remembered taking Ronald's cane following the accident. Other witnesses could not recall seeing Ronald use a cane or there being a cane in the vicinity of the accident.

this end, Menards requested and received a jury instruction stating that "[a] landowner is not required to take measures against a risk that would not be anticipated by a reasonable person." But on appeal, Menards argues that this was a commonsense danger and that Ronald assumed the risk of such a danger. However, Menards correctly observes that despite this apparent inconsistency, this Court determines only whether sufficient evidence existed at trial to support the defense.

[¶17.]     Menards relies by analogy on *Ray*, 1998 S.D. 40, 576 N.W.2d 896, for the proposition that the present case involves factual questions regarding knowledge of the risk that should have gone to the jury. Ray, a farm laborer, volunteered to help position an auger under a moving trailer. *Id.* ¶ 3, 576 N.W.2d at 897. Ray "hollered" as instructed after positioning the auger; however, the trailer continued moving, catching Ray's left foot and crushing his left leg. *Id.* ¶¶ 3-4. Ray brought a personal-injury suit against the driver, his employer, and the farm owner. Defendants moved for summary judgment, claiming Ray assumed the risk, which the circuit court granted. *Id.* ¶ 5, 576 N.W.2d at 897-98. On appeal, this Court examined whether reasonable minds could differ on whether Ray had actual or constructive knowledge of the risk of being run over by the trailer's rear wheels. *Id.* ¶ 13, 576 N.W.2d at 899. We stated that although risk is intrinsic to some acts, such risk "is not unlimited." *Id.* While Ray "put himself in harm's way by standing in a position to be run over," he nevertheless "did not consent to relieve the driver of his subsequent duty to act with reasonable care." *Id.* We thus reversed and remanded with respect to Ray's claim against the driver and the driver's employer. *Id.* ¶ 17, 576 N.W.2d at 900.

[¶18.] According to Menards, the record in this case contains sufficient evidence to create a factual question for the jury to resolve. However, the evidence fails to demonstrate Ronald *subjectively* knew of and appreciated the risk.[3] Unlike *Ray*, there is no evidence Ronald knew of the risks associated with how Weyand transported the plywood boards. Undoubtedly, Ronald knew it was windy. Menards highlights the testimony of Jensen's own expert witness, who stated this was not a freak accident and that wind is a "known hazard" in South Dakota. But the testimony of Jensen's expert witness did not identify the accident-causing condition as the wind alone; rather, he stated that it was "the wind *and handling* [of the] *plywood*" that led to Ronald's injuries. (Emphasis added.) Neither Jensen's nor Menards' witnesses testified that Ronald knew about the safety precautions required when handling plywood on a single-rail cart on a windy day. Indeed, the testimony suggests the opposite, and Weyand did not inform Ronald about any of the risks associated with transporting 300 pounds of plywood by leaning the boards against the side of a single-railed cart without wheel locks or brakes.

[¶19.] Menards also observes that Ronald sometimes worked with plywood and visited the Menards store on several occasions. However, this alone does not suggest Ronald knew of the dangers associated with Weyand's manner of transporting the materials in this instance. Menards further observes that Jensen's expert witness testified that parking outside the loading bay contributed to the danger. But while this latter evidence might suggest contributory negligence or

---

3. This is an unusual case in that Ronald died prematurely, foreclosing discovery regarding his subjective knowledge of the risk.

voluntary acceptance of the risk, it does not imply knowledge or appreciation of the risk.

[¶20.]     Further, constructive knowledge cannot be imputed to Ronald.  "The standard to be applied [to an assumption of the risk defense] is a subjective one," and "[i]n this it differs from the objective standard which is applied to contributory negligence."  Restatement (Second) of Torts § 496D cmt. c (Am. Law Inst. 1965). Some courts have therefore held that "[a]pplication of the doctrine requires actual, rather than constructive, knowledge."  *E.g.*, *Reimer v. City of Crookston*, 326 F.3d 957, 966 (8th Cir. 2003) (citing Minnesota cases); *Martin v. Roberts*, 464 N.E.2d 896, 903 (Ind. 1984) ("An inference of constructive knowledge is not sufficient to establish an assumption of risk as a matter of law.  Constructive knowledge is not a part of the doctrine.  It rather must be shown that there was an actual knowledge on the part of the plaintiff as to the risk involved and an assumption of that risk with such actual knowledge.").  However, "[t]here are some risks as to which no adult will be believed if he says that he did not know or understand them," such as the fact that contact with fire will result in a burn.  Restatement (Second) of Torts § 496D cmt. d.  As such, under South Dakota law, trial courts will also ask whether the plaintiff possessed constructive knowledge of the risk.  *See Duda*, 2008 S.D. 115, ¶ 13, 758 N.W.2d at 758.

[¶21.]     The use of an objective element in testing whether the plaintiff has assumed the risk has led to some confusion.  This confusion arises in part because of the oft-cited distinction between assumption of the risk and contributory negligence, that being the subjectivity of the former and the objectivity of the latter.  3 Stuart

M. Speiser et al., *American Law of Torts* § 12:50, Westlaw (database updated March 2017). We have declined on other occasions to examine whether South Dakota courts should continue to apply an objective standard under the assumption of the risk doctrine. *Burhenn v. Dennis Supply Co.*, 2004 S.D. 91, ¶ 37, 685 N.W.2d 778, 786 (holding the issue was moot); *Westover v. E. River Elec. Power Coop., Inc.*, 488 N.W.2d 892, 900 n.15 (S.D. 1992) (noting that plaintiff failed to file a notice of review for determination of the issue). Although we have acknowledged that "stat[ing] the doctrine in terms of what the plaintiff 'knew or should have known' about the danger" may confuse a jury, we have observed that some dangers are so obvious that despite an individual's "protestations of ignorance," a jury need not take "the plaintiff at his word, but . . . may instead test [him] . . . [using] principles of credibility and common sense." *Westover*, 488 N.W.2d at 900 n.15 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 68 (5th ed. 1984 & Supp. 1988)).

[¶22.]     Thus, in the context of assumption of the risk, constructive knowledge is confined to dangers "so plainly observable that the [plaintiff] must be presumed to have had *actual knowledge*[.]" *Bartlett v. Gregg*, 77 S.D. 406, 411, 92 N.W.2d 654, 657 (1958) (emphasis added). In testing whether an individual assumed the risk, constructive knowledge may only be imputed for dangers recognizable "in the exercise of ordinary common sense and prudence[.]" *Perreault v. Wis. Granite Co.*, 32 S.D. 275, 288, 144 N.W. 110, 114 (1913). Such a danger must be "obvious," *Schmeling v. Jorgensen*, 77 S.D. 8, 21-22, 84 N.W.2d 558, 566 (1957), and "[a] person has constructive knowledge of a risk [only] if it is plainly observable so that

anyone of competent faculties is charged with knowledge of it," *Carpenter v. City of Belle Fourche*, 2000 S.D. 55, ¶ 34, 609 N.W.2d 751, 764.

[¶23.] The danger Ronald faced was not so plainly observable. Menards' characterization of the risk—"plywood, stacked in a vertical position on a single-rail cart, created a risk that it would tip over on a windy day"—ignores context. Weyand, an employee that customers could presume was trained in safety protocols, unilaterally decided how to transport and position the materials on the cart. He did not obtain the assistance of a second employee to help him load the wood or request that Ronald pull into the bay. Weyand also did not object to Ronald standing near the cart or assisting with guiding the boards into the back of the pickup. And while Jensen's expert witness did not characterize the incident as a freak accident, he clarified by explaining that the term implies nothing could be done to prevent it, like an act of God or an earthquake. In this case, precautions could and should have been taken to minimize the risk.

[¶24.] But while Weyand may have acted unreasonably, the evidence at most establishes that Weyand created a nonobvious danger that his training and experience could have prevented. Indeed, the testimony of Menards' witnesses suggests that not even Weyand could have anticipated any risks associated with how he moved the boards. Although Menards highlights instances in the trial transcript where Jensen argued the danger was a commonsense risk, such argument by counsel does not support imputing constructive knowledge to Ronald. While no one can deny that fire is hot, the evidence does not suggest that plywood

brought out on a cart by a trained employee—albeit on a windy day—rises to the same level of obviousness necessary to impute constructive knowledge.

[¶25.]    Given the insufficiency of evidence establishing the first prong of knowledge of the risk or the second prong of appreciation of its character, an assumption-of-the-risk defense could not be established.  Therefore, the circuit court did not abuse its discretion when it declined to instruct the jury on assumption of the risk.  We affirm.

[¶26.]    GILBERTSON, Chief Justice, ZINTER and SEVERSON, Justices, and WILBUR, Retired Justice, concur.

[¶27.]    JENSEN, Justice, did not participate.