BARTLETT, Respondent v. GREGG, Appellant

(92 N.W.2d 654)

(File No. 9695. Opinion filed October 29, 1958)

408

**Woods, Fuller, Shultz & Smith,** and **H. L. Fuller,** Sioux Falls, for Defendant and Appellant.

**Martens, Goldsmith & May,** Pierre, for Plaintiff and Respondent.

BOGUE, J. The plaintiff, an employee of defendant, was injured while operating a stack mover on defendant's ranch. Plaintiff by this action seeks damages for the personal injuries he received from this accident.

Plaintiff claims that the accident occurred because of defects in the machinery known by defendant and by reason of defendant's negligence in the handling of the machine. Defendant denies negligence and claims that the accident occurred as a consequence of the ordinary risk of the business, assumption of known and obvious dangers of the employment and contributory negligence on the part of the plaintiff. The action was tried to a jury. The jury returned a verdict in favor of the plaintiff. Defendant now appeals from the judgment entered thereon.

The ultimate questions to be determined on this appeal as presented by the assignments of error are (1) Was the evidence sufficient to support the verdict and judgment? (2) Was it error to permit examination on voir dire as to the prospective juror's interest in any insurance company? (3) Was there error in the giving and refusing of certain instructions?

The defendant operates a ranch in Hughes County, South Dakota. The plaintiff at the time of the accident

and for some years before had worked for the defendant as a ranch hand. The defendant was wintering some cattle about three miles from his ranch buildings. These cattle were being fed hay. To do this a machine known as a stack mover was being used. It was used in connection with a tractor which furnished both its power and locomotion.

This machine consists of a number of strong steel teeth upon which a stack of hay can be drawn, moved where desired, and then pushed off. This particular stack mover was capable of moving a stack of from 10 to 12 tons. A power shaft projected from its front end which was connected to the power take-off of the tractor. By this means power was supplied to turn a winch located at the front end of the stack mover. Heavy steel cables wound on the winch. When hay was to be drawn on to the stack mover these heavy cables were attached to a sling, placed around the stack and the stack was then drawn on to the stack mover. In removing the hay from the stack mover, the heavy cables were attached to lighter steel cables, going through pulleys at the rear of the stack mover. The lighter cables were attached to a pusher bar and when power was applied to the winch the pusher bar was pulled to the rear of the stack mover, thus pushing the hay off. The heavier cables were attached to the lighter cables by grappling hooks.

In pushing off the hay it was necessary that the pusher bar be carefully watched. As the pusher bar approached the rear of the stack mover it was necessary to release the power. There was no safety device to do this. In the event the power was not released it would continue to pull the cables until the lighter ones would break at the back end. Because of the tension applied, the broken end of the cables had a tendency to whip towards the front end of the stack mover and towards where the tractor operator was sitting. These cables had broken on previous occasions when the power had not been released soon enough, and the cables had acted in the manner described. Both plaintiff and defendant knew that under such circumstances the cables could cause injury to a person operating the tractor or to a person near the stack mover.

Both the tractor and the hay mover had been owned and used for some years by the defendant. Sometime prior to the date of the accident the ignition switch of the tractor had broken. In order to turn on the ignition, therefore, it was necessary that the wires be attached by hand and to shut off the ignition it was necessary to detach the wires. The defendant had been informed of this condition. The shaft of the stack mover and the shaft of the power take-off of the tractor were both protected by a semi-circular shield located above them. Both plaintiff and defendant were aware of a new type of a protective shield that could have been used. These were fully circular in design and completely surrounded the shafts.

On the day the accident occurred the stack mover had been attached to the tractor and the hay drawn thereon before defendant arrived. Although defendant had not operated the tractor and stack mover as frequently as plaintiff he admitted that he was familiar with their operation. When defendant arrived he proceeded to operate the tractor. As the hay mover was being pulled by the tractor operated by defendant, plaintiff pitched a part of the hay off in order to spread it out upon the ground. Defendant then stopped the tractor and plaintiff hooked up the cables so that the balance of the hay could be pushed off by the pusher bar. To start the pusher bar in operation the defendant pushed in the clutch, put the power take-off in gear and then released the clutch. The defendant testified that he was familiar with the operation of the clutch and knew that by putting in the clutch the power would be released. As the pusher bar was moving the plaintiff stood at the front end and to one side of the stack mover. When this bar approached the rear of the stack mover, plaintiff called to defendant telling him to release the power. The defendant then called back to plaintiff, saying: "How do you shut the damn thing off, come up and show me." Plaintiff then told defendant to put in the clutch. The defendant, although he knew the pusher bar could be stopped quicker by putting in the clutch, failed to do this but instead attempted to shut off the motor of the tractor by pushing the button of the switch.

Plaintiff, seeing this, moved towards the back end òf the tractor to help the defendant. He grabbed the back òf the seat on which defendant sat and stepped up ·on the draw bar near the power take-off. As he stepped on the draw bar, the seat jarred, his foot slipped in under the shield into the power take-off and he suffered serious permanent injuries.

Defendant contends the evidence conclusively shows that plaintiff's knowledge of the danger equalled or exceeded that of defendant, thus plaintiff voluntarily placed himself in a position of danger. Defendant argues therefrom that plaintiff as a matter of law assumed the risks of his employment including the risks of the defendant's negligence.

■■ An employer must indemnify his employee for all that he necessarily expends or loses in direct consequence of the discharge of his duties as such or of his obedience to the direction of the employer, except where such losses were suffered in consequence of the ordinary risks of the business in which he is employed. An employer must in all cases indemnify his employee for losses caused by the employer's negligence. SDC 17.02.

■ In order for an employee to assume a risk there must have been a voluntary acceptance thereof. Such acceptance requires knowledge and appreciation of the risk. The employee's knowledge and appreciation of the risk must either be actual or the risk so plainly observable that the employee must be presumed to have had actual knowledge and appreciation thereof. See Schmeling v. Jorgensen, 77 S. D. 8, 84 N.W.2d 558; Hayes v. Richfield Oil Corporation, 38 Cal.2d 375, 240 P.2d 580; Chesapeake & Ohio Ry. Co. v. Proffitt, 241 U.S. 462, 36 S.Ct. 620, 60 L.Ed. 1102.

■ We have recognized two types of risks. These are designated as ordinary and extraordinary risks. Schmeling v. Jorgensen, supra. In Maher v. Wagner, 62 S.D. 227—230, 252 N.W. 647, 648, we said:

"Some confusion has arisen due to the fact that some of the cases take the position that the simple tool doctrine is based, or finds the reason

412

> for its existence, upon the doctrine of 'assumption of risk' by the employee. See Allen Gravel Co. v. Yarbrough, supra,·[133 Miss. 652.] However, the phrase 'assumption of risk' is used with two different meanings. In its original sense, it referred to the ordinary and inherent risks of employment, and, so far as 'assumption of risk' in this sense of of the word barred recovery by a servant injured in the course of employment, it did so because there was no breach of the master's duty, no actionable fault on the part of the master, and hence no cause of action. The phrase presently became extended, however, to embrace not only the ordinary and inherent risks of employment, but the enhanced unnecessary risks thereof due to the master's negligence, which negligence and enhancement of risk were known to the servant. When assumption of risk in this secondary meaning bars recovery by the servant, it is because, although the master's negligence gave rise to a cause of action and the master has been guilty of actionable fault, nevertheless recovery for the actionable fault is barred by the reason of the servant's voluntary continuance of employment with full knowledge of the negligently enhanced danger."

There is ample evidence in this record from which the jury could have found that defendant was negligent and his negligence created a danger and risk to the plaintiff. We are, therefore, concerned only with the secondary meaning of assumption of risk or extraordinary risk.

■ Courts have sometimes said that an employee can assume the extraordinary risks of his employer's negligence. We believe the courts have meant thereby that an employee can assume the risks of a condition created by the negligence of the employer but not the negligence of the employer at the time of the accident. See Restatement, Agency, § 521, comment e. An employee can in the course of his employment be suddenly confronted with a risk of which he had no previous knowledge such as his employer's negligence. In such case there is no opportunity for the

employee to make an intelligent choice between quitting and continuing in the service of his employer. Thus, there can be no voluntary acceptance or assumption of such risk. However, an employer can negligently create a condition of danger of which the employee has knowledge and appreciation of the risk. Under such circumstances the employee has the opportunity to make a choice between quitting and continuing in the service of his employer. If he chooses to continue he then assumes the extraordinary risks created by the negligence of his employer. See Cincinnati, N. O. & T. P. R. Co. v. Thompson, 6 Cir., 236 F. 1.

The defenses of assumption of extraordinary risks and of contributory negligence have oftentimes been confused by the courts. In most cases it makes little difference which the defense is called. However, in this case it becomes important because of the defendant's contentions. Prosser on Torts, 2d Ed. § 55, p. 305 says:

"In working out the distinction, the courts have arrived at the conclusion that assumption of risk is a matter of knowledge of the danger and intelligent acquiescence in it, while contributory negligence is a matter of some fault or departure from the standard of reasonable conduct, however unwilling or protesting the plaintiff may be. The two may coexist, or either may exist without the other. The difference is frequently one between risks which were in fact known to the plaintiff, or so obvious that he must be taken to have known of them, and risks which he merely might have discovered by the exercise of ordinary care."

See also Hayes v. Richfield Oil Corporation, supra.

As the pusher bar approached the back end of the stack mover the plaintiff called to the defendant to release the power from the tractor. Defendant apparently became confused in attempting to release the power. Instead of throwing in the clutch he attempted to shut off the motor of the tractor. He could see the switch was wired across and had been informed of that condition before he tried to operate the tractor. As a boss he did not operate the

stack mover and tractor as frequently as his employees but was familiar with their operation. There is no evidence in the record to indicate that plaintiff had any reason to anticipate that defendant would be unable to release the power.

 Under normal operations of the stack mover there would have been no occasion for plaintiff to have stepped on the draw bar while the power take-off was in operation. It was only after plaintiff was suddenly confronted with defendant's demand for help and the realization that defendant was not releasing the power that he stepped on the draw bar. The condition of the machinery, therefore, did not constitute a risk to plaintiff until defendant's negligence made it so.

Defendant contends that plaintiff did not have to step on the draw bar but could have run away from the danger of the cables or approached the tractor in a different manner. Assuming this to be true, this is not the freedom of choice we refer to when we speak of the voluntary assumption of a risk. There exists no opportunity under such circumstances for reflection to make an intelligent choice between quitting and continuing under the direction of his employer. The choices such as defendant points out are material only in determining whether plaintiff exercised due care in his behavior in regard to the risk and not to his assumption of such risk.

 We are of the opinion the evidence is insufficient to show that plaintiff assumed the risks he was confronted with here. The only issue for the jury to determine under the evidence was whether or not the plaintiff exercised the care that an ordinary prudent person would have under the same or similar circumstances. The jury found under proper instructions that plaintiff did exercise such care. Such finding is sustained by the evidence.

After a showing was made in the absence of the jury that defendant was insured by the Anchor Casualty Company of St. Paul, Minnesota, plaintiff moved that he be permitted to make inquiry of the jury on voir dire as to whether any prospective juror was an officer, director, stockholder

or agent of any **insurance company.** Defendant moved the examination be restricted to inquire whether a prospective juror was an officer, agent, employer or stockholder of any **corporation** and only if the answer was in the affirmative should further inquiry be permitted. The court granted plaintiff's motion limiting him to one question to the jury as a whole and denied defendant's motion. Defendant argues that it was error to permit the examination as requested by plaintiff.

 Defendant relies on the case of Jacobson v. Coady, 77 S.D. 1, 84 N.W.2d 1, 3, in support of his contention. In this case we said:

"This court has held that if plaintiff acts in good faith it is permissible to ask prospective jurors in cases of the character here involved if they are interested as a stockholder or agent of any insurance company handling liability insurance. We have also held that where it is shown out of the jury's hearing that defendant is insured that the good faith in asking such a question is established."

We then said, "It was not intended by our previous cases to hold that the questions therein propounded to prospective jurors were proper under all circumstances." It was not our intent, however, in the Jacobson case to hold that the form of question as requested by defendant therein with the additions suggested by us would be the only proper form of question under all circumstances. The matter of determining good faith of counsel in his examination of prospective jurors must of necessity rest within the sound discretion of the trial court. The trial court knows the attorneys, usually most of the jury panel, and the type of community in which the trial is held. From this knowledge the trial court is better enabled to determine the good faith of counsel than we can from the printed record. The trial court can, of course, abuse its discretion and in a proper case we would not hesitate to so find. We find no such abuse of discretion here.

We have considered the other assignments of error briefed and argued by plaintiff. We find no prejudicial error therein.

Affirmed.

RENTTO, P. J., and ROBERTS and HANSON, JJ., concur.

SMITH, J., concurs in result.