#24604-a-JKK

**2008 SD 115**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

TIM DUDA,                                          Plaintiff and Appellant,

    v.

PHATTY McGEES, INC.,
d/b/a HOOKY JACKS,                                 Defendant and Appellee,

    v.

WILLIE GUERRERO,                                   Third-Party Defendant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE THOMAS L. TRIMBLE
Judge

\* \* \* \*

GEORGE J. NELSON of
Abourezk & Zephier, P.C.                           Attorneys for plaintiff
Rapid City, South Dakota                           and appellant.

JOHN K. NOONEY
KIRSTEN M. TAGGART of
Nooney Solay & Van Norman, LLP                     Attorneys for defendant
Rapid City, South Dakota                           and appellee.

\* \* \* \*

ARGUED ON MAY 21, 2008

OPINION FILED **12/03/08**

#24604

KONENKAMP, Justice

[¶1.]        During a fist fight in a nightclub, when a beer bottle was broken over his friend's head, plaintiff stepped in front of his friend to protect him from further injury.  Plaintiff was then stabbed in the neck with the broken beer bottle.  In his lawsuit against the nightclub, plaintiff alleged, among other things, that the nightclub was negligent for failing to provide adequate and competent security.  The jury returned a special verdict finding that plaintiff assumed the risk of injury.  After the trial, the judge announced that during deliberations, the jury sent him four written questions.  Without giving notice to the parties or an opportunity to be heard, the judge answered all four questions.  On appeal, we affirm because whether plaintiff assumed the risk of injury was properly submitted to the jury, and plaintiff has failed to show prejudice despite the court's error in answering the jury questions without notice.

**I.**

[¶2.]        On Friday, March 9, 2001, around 9:00 p.m., Timothy Duda arrived with his friends at Phatty McGees, Inc., a restaurant and nightclub in downtown Rapid City, South Dakota.  They went upstairs where a DJ was playing music in a room with a dance floor and a bar.  It was crowded.  There were nine security personnel on duty that night, some downstairs and some upstairs.

[¶3.]        At midnight, Megan Thorpe, a friend of Duda's, went to tell Duda that she and her boyfriend were leaving.  Duda was near the bar talking to his friend, Ray Bledsoe.  As Thorpe approached Duda, she saw a man, later identified as Dustin Hunter, get into an argument with Bledsoe.  According to Thorpe, Bledsoe

and Hunter "exchanged fists." Thorpe then saw another man, who turned out to be Hunter's brother-in-law, Willie Guerrero, run past her and break a beer bottle over Bledsoe's head. Frightened, Thorpe turned to leave. As she turned, "there was [sic] bouncers running at me" to break up the fight.

[¶4.] Duda too saw Guerrero's attack on Bledsoe. He later recounted to the jury that when the bottle was smashed over Bledsoe's head, "I stepped in with my back to [Bledsoe] and my arms out to . . . try to keep him from getting injured more[.]" It was then that Guerrero stabbed Duda in the neck with the broken bottle. At first, Duda was not aware he had been injured. Thorpe noticed his bleeding. She led him downstairs where an ambulance was called. While they waited, she held her hands on Duda's throat, applying pressure "so that he wouldn't bleed to death." At the hospital, Duda underwent surgery to repair damage to his jugular vein, nerves, and neck muscles. He still suffers residual damage from the assault.

[¶5.] Duda brought a negligence suit against Phatty's. He alleged that the nightclub failed to have adequate and properly trained security personnel on duty that night, especially near the bar where he was attacked; the bar was noisy and overcrowded; fights and assaults, and other alcohol-related disturbances had occurred in the past; and the nightclub negligently failed to take adequate precautions to protect patrons from these disorders. He would later argue to the jury that the nightclub's midnight promotion, consisting of pouring free shots of whiskey into customers' mouths, contributed to the overcrowding and potential

alcohol-related conflicts, particularly around the bar where customers pressed forward to get to the free liquor.

[¶6.] Phatty's denied any negligence in its answer and asserted the affirmative defenses of contributory negligence and assumption of the risk. It also brought a third-party complaint against Guerrero for contribution and indemnity. During trial, Duda moved for a directed verdict to dismiss the defenses of contributory negligence and assumption of the risk. When his motion was denied, he timely objected to instructions on those defenses. He also objected to the verdict form lumping together his claim against Phatty's and Phatty's contribution and indemnity claim against Guerrero. These objections were overruled.

[¶7.] In arguing the case to the jury, Duda's attorney contended that the milieu in the nightclub — overcrowding, heavy drinking, loud music, dim lights, prior fights, and poor security — contributed to a "fight club" atmosphere, for which his client should not have to suffer. Phatty's attorney argued that it could not anticipate where or when a fight would break out, but that security personnel kept a list of known troublemakers who were excluded and that when the incident in question occurred security personnel responded within an extremely short time. The jury returned a special verdict, finding Phatty's 10% negligent and Guerrero 90% negligent. But the jury also found that Duda assumed the risk of injury, thus barring any recovery against Phatty's. After the verdict was read and the jury was discharged, the judge disclosed to the attorneys that during deliberations he answered four questions from the jury. The record reveals no explanation for why the judge failed to contact the lawyers to give them an opportunity to be heard

before he answered the questions.  Indeed, the court could have reached them because the attorneys had previously left their phone numbers with the bailiff.

[¶8.]     Duda moved for a judgment notwithstanding the verdict, or in the alternative, a new trial.  He averred error in the court's decision to answer the four questions without notice and an opportunity to be heard.  He further contended that the evidence did not support allowing the issues of assumption of the risk and contributory negligence to go to the jury.  From an adverse ruling on these matters, Duda appeals asserting that the circuit court:  (1) erred when it answered the four questions from the jury without notice; (2) abused its discretion when it denied the motion for a judgment notwithstanding the verdict, or in the alternative, a new trial; and (3) erred when it gave the jury a special verdict form that required allocation of fault between Phatty's and Guerrero.

## II.

### Assumption of the Risk – Intervening in a Barroom Fight

[¶9.]     Can a person be held to have assumed the risk of being stabbed, when that person shielded a friend engaged in a bar fight involving a broken beer bottle?  To answer this question, we must first identify what legal responsibility businesses bear on behalf of their patrons.  In South Dakota, business proprietors owe their customers the duty of exercising reasonable care for their safety.  Mitchell v. Ankney, 396 NW2d 312, 313 (SD 1986) (citing Restatement (Second) of Torts § 343 (1965)) (other citations omitted).  Accordingly, bar owners, though not insurers for the safety of their patrons, must exercise reasonable care to protect them from reasonably foreseeable injury at the hands of other patrons.  *See generally* Joan

Teshima, J.D., *Tavernkeeper's Liability to Patron for Third Person's Assault*, 43 ALR4th 281 (originally published in 1986). When patrons assume the risk of injury, however, bar owners may not be held liable.

[¶10.]    The crucial issue in this case is whether the jury should have been given the opportunity to decide whether Duda assumed the risk of injury. Duda believes the issue should never have been submitted to the jury.[1] He contends that the court erred when it failed to grant his motion for a directed verdict on whether he assumed the risk of injury.[2] Because the entire incident occurred within a span of thirty seconds, Duda had no time, he asserts, to appreciate the character of the risk. Moreover, Duda was not a mutual aggressor or co-combatant, and therefore, he argues that as an innocent person injured by the intentional act of another, the assumption of the risk defense is inapplicable.

[¶11.]    Phatty's responds that the record supports the assumption of the risk instruction and verdict. It believes that if we view the evidence in a light most favorable to the verdict, we will acknowledge that Duda saw Guerrero break the beer bottle over Bledsoe's head before Duda stepped into the middle of the fight. This fact alone, according to Phatty's, leads to a reasonable inference that Duda appreciated the nature of the risk.

---

1.    Duda lodges no complaint on the wording of the court's assumption of risk instruction, only that the instruction should not have been given.

2.    He also asserts that the issue of contributory negligence was erroneously submitted to the jury. Because the jury did not reach the question of contributory negligence, and because we affirm on the assumption of the risk issue, we do not address whether the court erred in allowing this affirmative defense.

[¶12.] "'Knowledge of the risk is the watchword of assumption of risk.'" Prosser on Torts § 68 (5thed 1984) (citation omitted). Indeed, assumption of the risk imports a knowing and voluntary self exposure to a known danger. Plaintiffs cannot assume risks of activities or conditions of which they are ignorant. *Id*. They "must not only know of the facts which create the danger, but [they] must comprehend and appreciate the danger itself." *Id*. "The standard to be applied is a subjective one, of what the particular plaintiff in fact sees, knows, understands and appreciates. In this it differs from the objective standard which is applied to contributory negligence." Restatement (Second) of Torts § 496D, cmt c (1965).

[¶13.] Under our traditional formulation, a person assumes the risk of injury when the person: "(1) had actual or constructive knowledge of the risk; (2) appreciated its character; and (3) voluntarily accepted the risk, with the time, knowledge, and experience to make an intelligent choice." Ray v. Downes, 1998 SD 40, ¶11, 576 NW2d 896, 898 (quoting Mack v. Kranz Farms, Inc., 1996 SD 63, ¶9, 548 NW2d 812, 814 (citation omitted)). A person is deemed to have appreciated the risk "'if it is the type of risk that no adult of average intelligence can deny.'" *Id*. ¶15 (quoting Westover v. East River Elec. Power Coop., Inc., 488 NW2d 892, 901 (SD 1992)).

[¶14.] Although Duda cites no cases directly on point, at least one court has addressed a similar question of a bystander interceding in a barroom confrontation. In *Fagan v. Atnalta, Inc.*, the plaintiff voluntarily intervened in an altercation between a female bartender, a waitress, and a rowdy group of men. 376 SE2d 204, 205 (GaCtApp 1988). One of the unruly men grabbed the bartender by the collar

while she was trying to get them to leave the bar. The plaintiff grabbed the bartender to keep her from being dragged outside. In response, the men dragged the plaintiff outside and severely beat him.

[¶15.] In his suit against the bar, the plaintiff alleged negligence in failing to provide for the safety and security of its patrons. Affirming summary judgment against the plaintiff, the Georgia Court of Appeals wrote that while summary judgment is not ordinarily granted on issues of negligence and assumption of the risk, in this case the facts were clear. *Id.* at 206. The plaintiff assumed the risk because he "saw and recognized the risk, and deliberately interjected himself into the affray after the bartender was grabbed by a customer being ejected. [He] obviously assumed the risk of injury by voluntarily confronting four rowdy customers being ejected from a bar by management." *Id.* Three judges dissented, with two asserting that the assumption of risk question should have been decided by a jury. Here, in contrast, the question was submitted to the jury.

[¶16.] Duda cites no case where, under similar circumstances, assumption of the risk was deemed an inapplicable defense. He testified that before he stepped into the fight to protect his friend, he saw Guerrero break a beer bottle over Bledsoe's head. Thus, while he claims he did not have time to appreciate the character of the risk, i.e., that he would be stabbed, we fail to see how it was an abuse of discretion for the court to submit the question to the jury. As Professor Prosser once wrote, "Since in the ordinary case there is no conclusive evidence against the plaintiff on [assumption of the risk issues], they are normally for the jury to decide." Prosser on Torts § 68. "Whether the plaintiff knows of the existence

of the risk, or whether he understands and appreciates its magnitude and its unreasonable character, is a question of fact, usually to be determined by the jury under proper instructions from the court." Restatement (Second) of Torts § 496D, cmt e (1965).

[¶17.] Because adults of average intelligence cannot deny the obvious, a plaintiff's testimony on what he or she knew or understood is not conclusive. *Id*. at § 496D cmt c. No one can reasonably deny that there is a risk of injury in stepping into the middle of a fight, especially one where a beer bottle is being used as a weapon. *See* Goepfert v. Filler, 1997 SD 56, ¶9, 563 NW2d 140, 143 (obvious danger). Duda could have waited for security personnel to intervene or he could have summoned the police. Yet he chose to act on his own. A jury could reasonably conclude that, having seen the broken bottle, Duda had to have known and appreciated that the character of the risk could include that bottle.

[¶18.] Duda also asserts that because he was not a combatant, the court abused its discretion when it denied his motion for a directed verdict. He cites no specific authority for the idea that an innocent bystander who intervenes in a fight cannot be held to have assumed the risk of injury. Granted, Duda was not an aggressor. But he was no mere bystander in the sense that he was incidentally injured by being in the vicinity of a barroom brawl. He deliberately placed himself between his friend and two assailants. Heroism can exact a high cost. Coming to the aid of an outnumbered friend in a fight, though understandable, and even commendable, still reflects a conscious decision to inject oneself into a volatile and dangerous situation.

[¶19.] Through his various motions, Duda wanted assumption of the risk removed from the jury's consideration, and the trial court refused. Rulings on motions for a directed verdict, a judgment notwithstanding the verdict, and a new trial are reviewed under the abuse of discretion standard. Bland v. Davison County, 1997 SD 92, ¶26, 566 NW2d 452, 460; *see also* Steffen v. Schwan's Sales Enters., Inc., 2006 SD 41, ¶7, 713 NW2d 614, 617 (citing Christenson v. Bergeson, 2004 SD 113, ¶10, 688 NW2d 421, 425) (additional citations omitted). "On reviewing a motion for a directed verdict, we must determine whether the record contains sufficient evidence to sustain the action, viewed in the light most favorable to the nonmoving party." *Steffen*, 2006 SD 41, ¶9, 713 NW2d at 618 (citing SDCL 15-6-50(a); *Christenson*, 2004 SD 113, ¶22, 688 NW2d at 427). With motions for a judgment notwithstanding the verdict, we view the evidence in a light most favorable to the verdict. Fechner v. Case, 2003 SD 37, ¶6, 660 NW2d 631, 633-34. Considering all the evidence in accordance with these standards, we conclude that the trial court did not abuse its discretion in denying Duda's motions.

### III.

### The Jury Questions

[¶20.] Duda complains that the "court's unilateral receipt of the jury's questions, and unilateral answering of the same, all occurring in *ex parte* fashion," constitutes error *per se*, mandating reversal and a new trial. No showing of prejudice is required, Duda contends, because "the court took it upon itself to not contact the parties' counsel, to not have the questions read in open court and on the record, and to not take from the parties' counsel their various objections,

supplementations, or further proposed instructions." If any showing of prejudice is required, Duda argues that each response was inappropriate and harmed the case.

[¶21.]     Until recently, our rules explicitly required a court to notify counsel and "settle in writing . . . a response to a jury question sent out by the jury during deliberations." SDCL 15-6-51(c) (amended July 1, 2006). As of July 1, 2006, SDCL 15-6-51(c) was amended to state:

> (1) A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds of the objection.
>
> (2) An objection is timely if:
>
>     (A) A party that has been informed of an instruction or action on a request before the jury is instructed and before final jury arguments, as provided by subdivision 15-6-51(b)(1), objects at the opportunity for objection required by subdivision 15-6-51(b)(2); or
>
>     (B) A party that has not been informed of an instruction or action on a request before the time for objection provided under subdivision 15-6-51(b)(2) objects promptly after learning that the instruction or request will be, or has been, given or refused.

The rule was amended to more closely follow the federal rule. *See* FedRCivP 51. Perhaps this amendment has created some confusion. Yet, despite the fact that South Dakota rules no longer contain an express requirement that a court inform the parties of jury questions or that the questions be settled in writing, it is still error even under the federal rule for a court to answer jury questions without giving the parties notice and an opportunity to be heard. *See* Dunne v. Libbra, 448 F3d 1024, 1028 (8thCir 2006); Murphy v. Tivoli Enters., 953 F2d 354, 360-61 (8thCir 1992). For such error to be reversible in a civil case, however, prejudice must be

established. *See Dunne*, 448 F3d at 1028 (citing *Murphy*, 953 F2d at 360-61; Powell v. Kroger Co., 644 F2d 1245, 1247 (8thCir 1981)).

[¶22.] Here, the court answered four questions from the jury without notice to the parties and an opportunity for them to be heard. By so doing, the court clearly erred. *See* Gilbert v. Caffee, 293 NW2d 893, 895 (SD 1980). To determine whether Duda was prejudiced by the court's errors, we must examine each jury question and the answer provided.

[¶23.] First jury question:

> Were any of Tim's lost wages or medical bills paid already? If yes how were they paid e.g. by Willie during the criminal case? By Phaties [sic]? or By Tim personally – or By other means? Or But [sic] personal insurance.

The court answered: "This is not for you to consider." According to Duda, the court's answer was prejudicial because it failed to state the applicable law. Had the court provided Duda an opportunity to be heard, Duda claims he would have urged the use of a modified version of South Dakota Pattern Jury Instruction 2-13, pertaining to insurance coverage. Phatty's responds that the court's answer properly informed the jury that it was not to consider any payment or insurance related to Duda's medical expenses, and therefore, the answer was not prejudicial.

[¶24.] Aside from Duda's claim that he would have proposed his modified version of a pattern instruction, he has not demonstrated how he was prejudiced by the court's answer. The response by the court did not inject the issue of insurance into the case. *See* Beck v. Wessel, 90 SD 107, 113-14, 237 NW2d 905, 908-09 (1976). On receiving the question, the court should have notified counsel for both parties. Failing to do so, however, does not mandate reversal.

[¶25.]     Second jury question:

> We have a question on instruction No 13[.]  Please explain the meaning of [sic] was that negligence a legal cause of injury to the plaintiff?  Please explain what the term legal cause is meaning.  Explain legal cause.

The court responded, "Negligence is defined in Instruction #20[.]  Legal Cause is defined in Instruction #21[.]"  According to Duda, the court's answer was prejudicial, first, because the court used a "legal cause" instruction rather than the former "proximate cause" instruction, and, second, the legal cause instruction confused the jury, and by referring the jury to the instructions defining the terms, the confusion was compounded.

[¶26.]     In his appellate brief, Duda claims he objected to the court's use of the "legal cause" instruction and proposed "the venerable older version of the causal connection instructions, the ones that use the term 'proximate' cause rather than 'legal' cause."  Our review of the record does not support this claim.  He did object to instruction 13, which relates to legal cause, but his objection was on different grounds.  Moreover, although the record includes thirty-five proposed instructions from Phatty's, there is only one instruction that arguably was proposed by Duda.  The instruction is entitled, "Plaintiff's Proposed Jury Instruction 38," but this does not concern legal or proximate cause.  There is also a pretrial conference checklist filed by Duda that indicates his intent to submit proposed instructions.  We cannot find these proposed instructions.  As the appealing party, Duda had the duty to ensure an adequate record for our review.  *See* Toben v. Jeske, 2006 SD 57, ¶11, 718 NW2d 32, 35 (quoting Caneva v. Miners & Merchants Bank, 335 NW2d 339, 342 (SD 1983)).

[¶27.]　　　There being no previous objection to the court's use of legal cause rather than proximate cause, Duda cannot now claim prejudice because the court used the legal cause instruction. "An attorney must be clear when objecting to jury instructions 'so the trial court is advised of what possible errors exist and be granted the opportunity to correct any instructions.'" Parker v. Casa Del Rey-Rapid City, Inc., 2002 SD 29, ¶15, 641 NW2d 112, 118 (citation omitted). Further, although the court should not have answered the jury's question without providing notice to the parties, we cannot say that the court's answer referring the jury to existing instructions prejudiced Duda.

[¶28.]　　　Third jury question:

> Instructions state first we must decide (#13) if pla[i]nt[iff] assume the risk of injury or damage. But the verdict form states is Phats [negligent] as the first question[.] [T]his contradicts each other. Do we start with #1 on the verdict form? Do we answer them in the order on the form?

The court answered, "Instruction #13 is answered at #4 on the verdict form. Yes, you start with #1 and answer in the order indicated on the verdict form." Duda does not identify how this answer was prejudicial, but instead contends that the court's response to this question must be considered in context with the court's response to the fourth question.

[¶29.]　　　Fourth jury question:

> What is the definition of a known risk? does this mean he <u>knows</u> he will get an injury? Or there is a risk for harm.

The court answered this question, writing, "A known Risk is a <u>Risk</u> you know about." From this answer, prejudice occurred in Duda's view, first, because the jury should never have been instructed on the affirmative defense of assumption of the

risk, and, second, the court's answer was misleading and incorrectly stated the law. Duda would have had the court give the jury the Fifth Edition Black's Law Dictionary definition of a known risk.

[¶30.] Undoubtedly, this question went to the heart of the issue the jury had to decide: did Duda know of the specific risk that ultimately resulted in his injury? Yet the court's elliptical answer neither added nor subtracted any substance from the settled instructions. The answer was sheer tautology, and, at most, a gloss on the instructions. Duda says he would have objected had he been informed of the question and would have requested the use of a law dictionary definition for the term "known risk," but he gives no indication how using his proposed definition might have produced a different result. If we regard the court's answer as an erroneous instruction, prejudice can be established if in all probability it produced some effect upon the verdict and was harmful to Duda's substantial rights. *See* First Premier Bank v. Kolcraft Enterps., Inc., 2004 SD 92, ¶40, 686 NW2d 430, 448. The prejudice asserted by Duda is more related to the fact that the court gave an assumption of the risk instruction in the first place. Because Duda has not identified how he was prejudiced by any of the judge's answers, reversal is not warranted.

[¶31.] Lastly, Duda contends that the court erred when it used a verdict form that instructed the jury to apportion fault between Guerrero and Phatty's if the jury found Phatty's negligent. Because the verdict on assumption of the risk disposed of Duda's claim in any event, we decline to reach this issue.

[¶32.] Affirmed.

[¶33.]     GILBERTSON, Chief Justice, and SABERS, and ZINTER, Justices,

concur.

[¶34.]     MEIERHENRY, Justice, dissents.


MEIERHENRY, Justice (dissenting).

[¶35.]     I cannot agree that the jury was properly instructed on assumption of

the risk.  In fact, whether the common law assumption of the risk doctrine

completely survives in face of the legislative comparative negligence scheme is

questionable.  South Dakota tort liability law only refers to contributory negligence

and contains no mention of assumption of the risk as a defense.[3]  Some

jurisdictions have determined that comparative negligence has subsumed

assumption of the risk and is not a complete bar to recovery.  *See* Braswell v. Econ.

Supply Co., 281 So2d 669 (Miss 1973); Springrose v. Willmore, 292 Minn 23, 192

NW2d 826 (1971); City of Tucson v. Holliday, 3 Ariz App 10, 411 P2d 183 (1966);

21 Am Jur Trials 715, § 11; Restatement (Third) Torts: Apportionment of Liab. § 2

---

3.     SDCL 20-9-1 provides: "Every person is responsible for injury to the person,
       property, or rights of another caused by his willful acts or caused by his want
       of ordinary care or skill, subject in the latter cases to the defense of
       contributory negligence."  SDCL 20-9-2 provides:
              In all actions brought to recover damages for injuries to a person or to
              that person's property caused by the negligence of another, the fact
              that the plaintiff may have been guilty of contributory negligence does
              not bar a recovery when the contributory negligence of the plaintiff
              was slight in comparison with the negligence of the defendant, but in
              such case, the damages shall be reduced in proportion to the amount of
              plaintiff's contributory negligence.
       *Id.*

cmt i (2000) (replacing Restatement (Second) Torts §§ 496C-496G (1965)).[4]

However, plaintiff is not urging this argument; he merely claims that the facts did

not support the trial court instructing the jury on assumption of the risk.

[¶36.]     The court instructed the jury using South Dakota Pattern Jury

Instructions 13-01 and 13-02.  The instructions provided the following language:

> If a person assumes the risk of injury or damage, the person is
> not entitled to any recovery.  To support an assumption of the
> risk defense, the defendant must show:
>     (1)     that the plaintiff had actual or constructive
>             knowledge of the existence of the specific risk
>             involved;
>     (2)     that the plaintiff appreciated the risk's character;
>             and
>     (3)     that the plaintiff voluntarily accepted the risk,
>             having had the time, knowledge, and experience to
>             make an intelligent choice.

---

4.     While South Dakota still relies on the Restatement (Second) of Torts, the
Restatement (Third) distinguishes implied assumption of the risk.
Restatement (Third) Torts: Apportionment of Liab. § 2 cmt i provides as
follows:
> *i. Implied assumption of risk distinguished.*  This Section does not
> apply when a plaintiff's conduct demonstrates merely that the plaintiff
> was aware of a risk and voluntarily confronted it.  That type of
> conduct, which is usually called "implied assumption of risk," does not
> otherwise constitute a defense unless it constitutes consent to an
> intentional tort.  See Comment *f.*  Thus, the rule stated in this Section
> rejects and replaces Restatement Second, Torts §§ 496C-496G.  A
> plaintiff's conduct in the face of a known risk, however, might
> constitute plaintiff's negligence and therefore result in a percentage
> reduction of the plaintiff's recovery.  See § 3, Comment *c.*  (In
> jurisdictions that continue to recognize implied assumption of risk as a
> comparative defense, or that continue to use the term "implied
> assumption of risk" to refer to a type of plaintiff's negligence, the
> defense results in a percentage reduction of the plaintiff's recovery.  In
> contrast, a valid contractual limitation on liability, within its terms,
> creates an absolute bar to a plaintiff's recovery from the other party to
> the contract.)

     *Id.*

SD Pattern Jury Instruction 13-01 (Revised 2002).

> While the same conduct on the part of the plaintiff may amount to both assumption of risk and contributory negligence, the two defenses are distinct. Assumption of the risk involves a voluntary or deliberate decision to encounter a known peril whereas contributory negligence frequently involves the inadvertent failure to notice danger. In addition, contributory negligence must be a legal cause of the injury in order to be a defense, while assumption of the risk need not cause the injury in order to bar recovery.

SD Pattern Jury Instruction 13-02 (Revised 2004). During deliberation, the jury sent out the following questions concerning assumption of the risk: "What is the definition of a known risk? Does this mean he knows he will get an injury? Or there is a risk for harm." Without seeking input from counsel for either party, the judge answered the question, "A known risk is a risk you know about."

[¶37.] I believe that the judge's answer was inadequate and did not fully inform the jury on how to determine the risk assumed. Had the judge notified counsel in regard to the jury question, counsel may have been able to answer the jurors' questions with more clarity. As the judge's answer stands, it provides no further explanation as to how to define "known risk."

[¶38.] The comments to South Dakota Pattern Jury Instruction 13-01 on assumption of risk point out the possible confusion when this instruction is given.

> As the above instruction sets forth, defendant must prove three elements in order to prevail on the defense of assumption of risk.
> ***As to the first prong of the defense, "constructive knowledge" is knowledge that is imputed to the plaintiff where the risk is so plainly observable that anyone of competent faculties could be charged with knowledge of the risk. Also, plaintiff must have had knowledge of the specific risk which ultimately injured the plaintiff; it is***

> ***insufficient to prove the first prong of the defense to
> merely show that plaintiff put himself in a generalized
> zone of danger.***
>
> As to the second prong of the defense, an individual is
> held to have appreciated the risk's character if it was a risk that
> no adult person of average intelligence can deny.
>
> ***Regarding the third prong of defendant's burden, a
> plaintiff does not voluntarily accept a risk where the
> defendant's wrongful conduct has left plaintiff no
> reasonable alternative course of conduct to (a) avert harm
> to plaintiff or another, or (b) exercise or protect a right or
> privilege of which the defendant has no right to deprive
> the plaintiff.***
>
> The defenses of assumption of risk and of contributory
> negligence have often times been confused. Quoting Prosser, the
> South Dakota court in Bartlett v. Gregg, 77 SD 406, 413, 92
> NW2d 654 (1958) said: "In working out the distinction, the
> courts have arrived at the conclusion that assumption of risk is a
> matter of some fault or departure from the standard of
> reasonable conduct, however unwilling or protesting the plaintiff
> may be. . . . The difference is frequently one between risks
> which were in fact known to the plaintiff, or so obvious that [the
> plaintiff] must be taken to have known of them, and risks which
> [the plaintiff] merely might have discovered by the exercise of
> ordinary care."

SD Pattern Jury Instruction 13-01 cmt (emphasis added).

[¶39.] Additionally as pointed out by Chief Justice Gilbertson in *Ray v.
Downes*, the consent element of assumption of the risk is confusing. 1998 SD 40
¶13, 576 NW2d 896, 899. "In the words of Prosser, 'This is a distinction which has
baffled a great many law students, some judges, and unhappily a few very learned
legal writers.'" *Id.* (quoting W. Page Keeton et al., Prosser and Keeton on the Law
of Torts § 68, at 485 (5thed 1984)).

> It is here that there is the greatest misapprehension and
> confusion as to assumption of risk, and its most frequent
> misapplication. It is not true that in any case where the plaintiff
> voluntarily encounters a known danger he necessarily consents
> to any future negligence of the defendant. A pedestrian who
> walks across the street in the middle of a block, through a

> stream of traffic traveling at excessive speed, cannot by any stretch of the imagination be found to consent that the drivers shall not use care to watch for him and avoid running him down. On the contrary, he is insisting that they shall. This is contributory negligence pure and simple; it is not assumption of the risk.

*Id.* Given the confusion of applying assumption of the risk, the jury here needed more guidance. Further instruction similar to the comments to the pattern jury instruction would have helped. For example, "plaintiff must have had knowledge of the specific risk which ultimately injured the plaintiff; it is insufficient to prove the first prong of the defense to merely show that plaintiff put himself in a generalized zone of danger." SD Pattern Jury Instructions 13-01 cmt.

[¶40.] Also, as to the third element, that "a plaintiff does not voluntarily accept a risk where the defendant's wrongful conduct has left plaintiff no reasonable alternative course of conduct to (a) avert harm to plaintiff or another, or (b) exercise or protect a right or privilege of which the defendant has no right to deprive the plaintiff." *Id.* This also corresponds to section 496E of the Restatement (Second) of Torts. This section provides that:

> (1) A plaintiff does not assume a risk of harm unless he voluntarily accepts the risk. (2) The plaintiff's acceptance of a risk is not voluntary if the *defendant's tortious conduct has left him no reasonable alternative course of conduct in order to (a) avert harm to himself or another,* or (b) exercise or protect a right or privilege of which the defendant has no right to deprive him.

Restatement (Second) Torts § 496E (1965) (emphasis added). "[W]here the defendant is under a duty to the plaintiff, and his breach of duty compels the plaintiff to encounter the particular risk in order to avert other harm to himself, his acceptance of the risk is not voluntary, and he is not barred from recovery." *Id.*

cmt c. This same rule applies when the plaintiff acts to prevent harm to another. *Id.* The facts supported further instruction on the "alternative course of conduct."

[¶41.] I would reverse both because the assumption of risk instructions were incomplete and tended to confuse and mislead the jury and because the plaintiff was prejudiced when the judge did not notify counsel of the jury's question in order to give him the opportunity to offer further instructions in response to the jury question.