#28095-r-SLZ
**2017 S.D. 91**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DALLAS SCHOTT and CORSON
COUNTY FEEDERS, INC.,                                Plaintiffs and Appellants,

v.

SOUTH DAKOTA WHEAT
GROWERS ASSOCIATION,                                Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE FOURTH JUDICIAL CIRCUIT
CORSON COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE MICHAEL W. DAY
Judge

\* \* \* \*

JUSTIN M. SCOTT
MELISSA E. NEVILLE of
Bantz, Gosch & Cremer, LLC
Aberdeen, South Dakota                                Attorneys for plaintiffs
                                                      and appellants.


MICHAEL L. LUCE of
Lynn, Jackson, Shultz &
    Lebrun, PC
Sioux Falls, South Dakota                            Attorneys for defendant
                                                      and appellee.

\* \* \* \*

ARGUED OCTOBER 4, 2017
OPINION FILED **12/27/17**

#28095

ZINTER, Justice

[¶1.]        Dallas Schott, the owner of Corson County Feeders, Inc., sued South Dakota Wheat Growers Association (SDWG), alleging its agronomist incorrectly prescribed a herbicide that Schott sprayed on his 2014 sunflower crop.  The herbicide was not labeled for use on all of Schott's sunflowers, and 1,200 acres were destroyed.  The circuit court granted SDWG summary judgment, ruling that Schott assumed the risk.  We reverse and remand because there are disputed issues of fact concerning Schott's knowledge and appreciation of the risk.

*Facts and Procedural History*[1]

[¶2.]        SDWG provides a variety of agronomy services for growers.  The services include recommending chemicals, seed varieties, and fertilizers that SDWG sells.  The services also include direction on what herbicides to use on what crops.  To properly provide those services, SDWG performs field scouting and soil testing.  It also maintains field lists and aerial maps of its customers' crops.

[¶3.]        Schott farms 12,000 acres of land in north-central South Dakota.  In 2008 or 2009, he started growing sunflowers with advice from two SDWG employees: Craig Maher, the SDWG agronomy manager, and Jason Fees, the SDWG agronomist.  Each year SDWG provided Schott with a large binder that contained the plans for what he would plant in each field.  The plans were based on soil testing and Schott's previous year's crop.  The plans also included SDWG's recommendation for herbicide applications on each field.  Schott testified in his

---

1.      Because Schott's complaint was dismissed by summary judgment, the facts
        stated herein are generally Schott's version.

-1-

deposition that over the years, he had asked SDWG agronomists for direction on what herbicides to use on his crops and that he followed those directions "a hundred percent."

[¶4.] The dispute in this case arose because of a mistaken use of a herbicide called "Beyond" on Schott's "non-Clearfield" variety of sunflowers. Confection, con-oil, and oil variety sunflowers are raised in Schott's area, and each variety is sold in both Clearfield and non-Clearfield types. The Clearfield and non-Clearfield varieties are not distinguishable when growing, but the proper herbicide to be used is dependent on the variety. "TapOut" is a herbicide designed for use on non-Clearfield sunflowers. The herbicide Beyond is specifically designated for Clearfield sunflowers because that variety has been genetically modified to tolerate Beyond. However, non-Clearfield sunflowers do not tolerate Beyond. SDWG sells both of these sunflower varieties and herbicides at its facility.

[¶5.] When Schott first started growing sunflowers, he only grew the non-Clearfield, oil seed variety. In 2012, Fees introduced Schott to Dahlgren & Co., Inc., another seed supplier. Thereafter, Schott began purchasing a mixture of sunflower varieties from Dahlgren, but he continued to purchase herbicides from SDWG. Although Schott was then purchasing sunflower seed from Dahlgren, Schott testified that Fees determined the number of acres that would be planted with each sunflower variety. According to Schott, this practice continued from 2012 through 2014.

[¶6.] Following this practice, in December 2013, Fees developed a written plan for Schott's 2014 crop of around 3,200 acres of sunflowers. The plan included

ordering both TapOut and Beyond, indicating Fees intended Schott to plant both

Clearfield and non-Clearfield sunflowers. However, Fees would later claim that the

plan changed. During discovery, Fees testified that around January 24, 2014,

Schott told Fees that Schott had changed his plan and was only going to plant the

Clearfield variety. Schott denied the conversation occurred. He claimed he was

obligated to plant the Dahlgren-contracted mixture of varieties. Schott also

testified that he did not know what Clearfield sunflowers were. He insisted that at

the time of planting and spraying the crop at issue, he neither knew what Clearfield

sunflowers were nor the difference between the Clearfield and non-Clearfield

varieties.

[¶7.]     In any event, Schott ultimately planted the Dahlgren-contracted

sunflowers (both Clearfield and non-Clearfield varieties), and in June 2014, he

contacted Fees for a herbicide prescription. Fees prescribed and furnished Beyond

even though Schott had planted an incompatible, non-Clearfield variety. Schott

then sprayed his sunflowers with Beyond, which killed 1,200 acres of the non-

Clearfield variety.

[¶8.]     Schott subsequently brought this suit against SDWG for negligence,

breach of contract, and breach of warranty. SDWG moved for summary judgment,

claiming that Schott assumed the risk and was contributorily negligent. SDWG

argued that Fees did not tell Schott to spray Beyond on non-Clearfield sunflowers;

that Schott alone sprayed Beyond and caused the damage; that Schott was a

licensed spray applicator in the State of South Dakota and was responsible for

reading the label on the chemicals he sprayed; that Schott admitted he did not read

the Beyond label, which indicated it could only be used on the Clearfield variety; and that both Schott's and SDWG's experts agreed that a reasonable grower should know which fields were planted with Clearfield and non-Clearfield sunflowers.

[¶9.]     Schott resisted summary judgment, claiming that he did not knowingly assume the risk. He relied on his sworn testimony that he did not know what Clearfield sunflowers were and that he did not know the difference between the Clearfield and non-Clearfield varieties. He therefore argued that he did not have actual knowledge of the risk. Schott also argued that although SDWG produced facts suggesting he should have had knowledge of the risk, those facts were evidence of contributory negligence for a jury to consider rather than facts establishing assumption of the risk as a matter of law.

[¶10.]     The circuit court did not reach the question of contributory negligence because it granted SDWG summary judgment on assumption of the risk. Relying on Schott's status as a licensed applicator, the court explained:

> So this case is about one thing, which is the Plaintiff, in this case, sprayed the non-Clearfield sunflowers with Beyond, which was a mistake. He didn't read the label. As a licensed applicator, he's required to follow the label.

[¶11.]     Schott appeals, raising three issues. He contends: he did not have actual knowledge of the risk; he did not have constructive knowledge of the risk; and even as a licensed spray applicator, he should not be charged with knowledge of the risk.

*Decision*

[¶12.]     "A person assumes the risk of injury when the person: '(1) has actual or constructive knowledge of the risk; (2) appreciates its character; and (3) voluntarily

-4-

accepts the risk, with the time, knowledge, and experience to make an intelligent choice.'" *Karst v. Shur-Co.*, 2016 S.D. 35, ¶ 30, 878 N.W.2d 604, 617 (quoting *Duda v. Phatty McGees, Inc.*, 2008 S.D. 115, ¶ 13, 758 N.W.2d 754, 758). "It is only when the[se] essential elements are conclusively established that the plaintiff may be charged with assumption of the risk as a matter of law." *Mack v. Kranz Farms, Inc.*, 1996 S.D. 63, ¶ 8, 548 N.W.2d 812, 814. Therefore, a defendant's "failure to establish any of these elements will preclude summary judgment." *Ray v. Downes*, 1998 S.D. 40, ¶ 11, 576 N.W.2d 896, 898.[2]

[¶13.] As just noted, both "knowledge and appreciation of a particular risk" are essential elements of this defense. *Thomas v. St. Mary's Roman Catholic Church*, 283 N.W.2d 254, 260 (S.D. 1979); *accord Bartlett v. Gregg*, 77 S.D. 406, 413, 92 N.W.2d 654, 658 (1958). These elements require "knowledge of the danger and intelligent acquiescence in it." *Bartlett*, 77 S.D. at 413, 92 N.W.2d at 658. Plaintiffs "must not only know of the facts [that] create the danger, but they must comprehend and appreciate the danger itself." *Duda*, 2008 S.D. 115, ¶ 12, 758 N.W.2d at 758 (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 68, at 487 (5th ed. 1984)). "The standard to be applied is a subjective one, of

---

2. "Summary judgment may be granted 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Ivey & Kornmann v. Welk*, 2017 S.D. 42, ¶ 8, 898 N.W.2d 461, 463 (quoting SDCL 15-6-56(c)). When reviewing a grant of summary judgment, "[t]he evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Id.* "We review a circuit court's entry of summary judgment under the de novo standard of review." *Heitmann v. Am. Family Mut. Ins. Co.*, 2016 S.D. 51, ¶ 8, 883 N.W.2d 506, 508.

what the particular plaintiff in fact sees, knows, understands and appreciates." *Id.* (quoting Restatement (Second) of Torts § 496D cmt. c (Am. Law. Inst. 1965)). "Plaintiffs cannot assume risks of activities or conditions of which they are ignorant." *Id.* Thus, "[i]f by reason of age, or lack of information, experience, intelligence, or judgment, the plaintiff does not understand the risk involved in a known situation, he will not be taken to assume the risk, although it may still be found that his conduct is contributory negligence because it does not conform to the community standard of the reasonable man." Restatement (Second) of Torts § 496D cmt. c.

[¶14.]     On the other hand, the knowledge and appreciation-of-danger elements are not purely subjective questions in constructive-knowledge cases. A "plaintiff's own testimony as to what he knew, understood, or appreciated, is not necessarily conclusive. There are some risks as to which no adult will be believed if he says that he did not know or understand them." *Id.* cmt. d. Typical examples of this kind of risk include such things as an adult's knowledge that one can burn from fire, drown in water, or fall from heights. *Id.* Ultimately, whether the knowledge at issue is actual or constructive, knowledge of the risk and appreciation of its magnitude and unreasonable character are normally questions of fact for the jury. *Id.* cmt. e. They may be resolved by the court only where "reasonable [people] could not differ on the question whether [the plaintiff] assumed the risk." *Myers v. Lennox Co-op Ass'n*, 307 N.W.2d 863, 864–65 (S.D. 1981).

[¶15.]     We first consider the issue of actual knowledge. In the proceedings below, Schott repeatedly denied having actual knowledge of the difference between

Clearfield and non-Clearfield sunflowers. SDWG argues Schott had actual knowledge because he successfully planted and sprayed both Clearfield and non-Clearfield varieties in previous years. But there is no dispute that these varieties are not distinguishable when growing, and Schott's experience from prior years is not evidence that he had actual knowledge of the variety he was spraying at the time of this mistake in 2014. Additionally, as Schott points out, the inference from this evidence could merely be that he successfully relied on SDWG's correct prescription in prior years. Although Schott's experience in prior years creates an inference of actual knowledge in 2014, at the summary-judgment stage, inferences drawn from facts must be viewed most favorably to Schott.

[¶16.] SDWG also claims Schott had actual knowledge of the variety he was spraying because Schott told Fees that Schott had planted all Clearfield sunflowers. However, Schott denies this conversation took place. Moreover, Fees admitted during his deposition that he could not recall the exact words Schott used in this conversation and that the words used would be important if Schott did not know what Clearfield sunflowers were. Reviewing the facts and inferences in the light most favorable to Schott, a genuine issue of material fact exists as to whether he actually knew the difference between Clearfield and non-Clearfield sunflowers.

[¶17.] SDWG, however, also claims that Schott had constructive knowledge of the risk. As previously noted, "[b]ecause adults of average intelligence cannot deny the obvious, a plaintiff's testimony on what he or she knew or understood is not conclusive." *Duda,* 2008 S.D. 115, ¶ 17, 758 N.W.2d at 759. Plaintiffs are charged with constructive knowledge of some risks that are so plainly observable that the

injured party must be presumed to have had actual knowledge and appreciation of the risk. *Bartlett,* 77 S.D. at 411, 92 N.W.2d at 657. There are few such risks, and they are only those "to which no adult will be believed if he says that he did not know or understand them." Restatement (Second) of Torts § 496D cmt. d.

[¶18.] SDWG claims Schott had constructive knowledge of the risk because the Beyond label indicated that it could only be used on Clearfield sunflowers and because both parties' experts testified that it is the role of the grower to ensure that the correct herbicide is applied. However, SDWG's claim overlooks admissions made by its employees. SDWG employees admitted that Schott relied on SDWG for what to spray, when to spray, and where to spray. Additionally, in light of Schott's sworn testimony, there is a genuine dispute of material fact as to whether Schott actually knew the difference between Clearfield and non-Clearfield sunflowers at the time he sprayed them. Therefore, if he was actually unaware of the difference and he relied on SDWG for what to spray, the act of reading the Beyond label would not have put him on notice of the risk of applying Beyond to non-Clearfield sunflowers. Under those facts, Schott could have believed he was spraying Beyond on Clearfield sunflowers. Even SDWG's expert admitted that reading the label would not have been an advantage if Schott did not know the kind of sunflowers he was spraying.

[¶19.] SDWG, however, also points out that Schott was a licensed spray applicator, and we acknowledge that the Secretary of Agriculture may take disciplinary action against any applicator who applies a herbicide inconsistent with

labeling.[3] SDWG argues that licensed applicators are bound to have knowledge of the risk at issue in this case. However, the record does not reflect that Schott's licensure required training or knowledge in distinguishing sunflower varieties. We also note that the actual variety planted in the affected area was not discernible at the time they were sprayed. Treating these facts to be true for purposes of summary judgment, we cannot say that "no [licensed applicator] will be believed" if he claimed he unknowingly sprayed Beyond on a variety of sunflower that was not tolerant of that herbicide. *See id.* Under these facts, Schott's status as a licensed applicator did not establish constructive knowledge as a matter of law.

[¶20.] In sum, Schott's knowledge of the risk and appreciation of its danger is largely dependent on whether (1) he actually knew the difference between Clearfield and non-Clearfield sunflower varieties, and (2) whether he knew the affected acres had been planted with non-Clearfield sunflowers. Without such knowledge, he could not have "comprehend[ed] and appreciate[d] the danger." *See Duda*, 2008 S.D. 115, ¶ 12, 758 N.W.2d at 758. Because there are disputed issues of fact concerning these questions, summary judgment should not have been granted. This is not one of those "rare cases" appropriate for summary judgment. *See e.g.,* *Goepfert v. Filler*, 1997 S.D. 56, ¶ 13, 563 N.W.2d 140, 144 (affirming summary

---

3. SDCL 38-21-44 provides in relevant part:

> The secretary of agriculture . . . may deny, suspend, revoke, or modify any provision of any license or certification issued under this chapter, if he finds that the applicant or the holder of a license or certification has committed any of the following acts, each of which is declared to be a violation of this chapter: . . .
>
> (2) Made a pesticide recommendation or application inconsistent with the labeling . . . .

judgment based on finding that plaintiff assumed the risk in jumping from a moving vehicle); *Myers*, 307 N.W.2d at 865 (affirming summary judgment based on finding that plaintiff assumed the risk of walking on top of a pile of lumber). Like most assumption-of-the-risk cases, the determination whether Schott assumed the risk here must be made by a jury. *See Stenholtz v. Modica*, 264 N.W.2d 514, 518 (S.D. 1978).

[¶21.]    We reverse and remand for further proceedings consistent with this opinion. In light of this disposition, we do not consider the parties' other arguments.

[¶22.]    GILBERTSON, Chief Justice, SEVERSON and KERN, Justices, and WILBUR, Retired Justice, concur.

[¶23.]    JENSEN, Justice, not having been a member of the Court at the time this action was assigned, did not participate.