#27973-r-SLZ
**2017 S.D. 42**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

IVEY AND KORNMANN, a
South Dakota Partnership,                          Plaintiff and Appellee,

    v.

WILLIAM G. WELK,                                   Defendant and Appellant.


* * * *


APPEAL FROM THE CIRCUIT COURT OF
THE FIFTH JUDICIAL CIRCUIT
BROWN COUNTY, SOUTH DAKOTA

* * * *


THE HONORABLE RODNEY J. STEELE
Retired Judge

* * * *


MARSHALL C. LOVRIEN of
Bantz, Gosch & Cremer, LLC
Aberdeen, South Dakota                             Attorneys for plaintiff and
                                                   appellee.



DANNY R. SMEINS
Britton, South Dakota

and

BRAD A. SINCLAIR of
Kaler Doeling, PLLP
Fargo, North Dakota                                Attorneys for defendant and
                                                   appellant.

* * * *

CONSIDERED ON BRIEFS
ON APRIL 24, 2017
OPINION FILED **06/28/17**

#27973

ZINTER, Justice

[¶1.]        William Welk executed a promissory note in favor of Ivey and Kornmann, a partnership (Partnership). The Partnership subsequently brought this action to collect the debt. Welk raised several affirmative defenses, asserting that the note was satisfied by a subsequent agreement or substitute performance. Welk also counterclaimed for breach of contract, fraud, deceit, misrepresentation, negligent misrepresentation, and unjust enrichment. The circuit court granted summary judgment in favor of the Partnership on all of Welk's defenses and counterclaims. Welk appeals. We reverse and remand.

*Facts and Procedural History*

[¶2.]        The Partnership owned undeveloped real property in Aberdeen. Charles Kornmann, who was both a partner in the Partnership and a trustee of the Kornmann Revocable Trust (Trust), decided to construct a twin home on the property. He discussed the project with Welk, a family friend, and Welk agreed to help construct the twin home. Welk subsequently provided labor and services between April 2009 and January 2010. There is no writing evidencing the agreement or the consideration Welk was to receive.

[¶3.]        In May 2009, after Welk had started on the project, the Partnership conveyed the property to Kornmann and his wife as trustees of the Trust. The record suggests that Welk was not aware of the transfer. The twin home was completed in mid-2010, and on August 25, 2010, the City issued a final certificate of occupancy.

-1-

[¶4.]     On September 29, 2010, the Partnership loaned Welk $31,000. Although the record does not reflect the purpose of the loan, the record reflects that the money came from Kornmann's personal bank account. The record also reflects that on October 1, 2010, Welk executed a promissory note, payable to the Partnership on demand, for the $31,000 plus interest.

[¶5.]     Three years later, an unrelated dispute arose between Kornmann and Welk regarding their interests in a condominium in Mexico. On December 24, 2013, Kornmann sent Welk a letter about the dispute. In the letter, Kornmann reminded Welk that the Partnership held the promissory note and that payment could be demanded at any time. Welk replied to the letter but made no reference to the note.

[¶6.]     On November 5, 2014, the Partnership demanded payment of the note. Welk did not respond to the written demand, and the Partnership commenced this action on the note. Welk raised numerous affirmative defenses, including accord and satisfaction, novation, and substitution. Welk also filed counterclaims against the Partnership for breach of contract, fraud, deceit, misrepresentation, negligent misrepresentation, and unjust enrichment. The counterclaims were based on Welk's allegation that he had entered into an agreement with the Partnership to assist with construction of the twin home. He alleged that he was to be compensated for his contributions either by obtaining an interest in the property or monetary compensation. Welk, however, alleged that he and Kornmann had agreed that Welk would give up his right to compensation in return for satisfaction of the note. Therefore, Welk claimed that if he was found liable to the Partnership on the note, the Partnership was liable to him for breach of the agreement regarding

construction of the twin home. He also claimed that if he was found liable on the note, the Partnership was liable for fraud, deceit, misrepresentation, and unjust enrichment in its dealings with him.

[¶7.]     The circuit court granted summary judgment in favor of the Partnership on the note, Welk's affirmative defenses, and Welk's counterclaims. With respect to the note, there was no dispute that it was a valid note that Welk had not repaid. The court rejected Welk's affirmative defenses alleging discharge (accord and satisfaction, novation, and substitution) because the partnership agreement required unanimous consent of the partners to discharge a debt, and Welk failed to identify any evidence suggesting all partners agreed to discharge the Partnership's note. Under these circumstances, the court reasoned that even if Kornmann and Welk had agreed to discharge the note, the discharge was not enforceable because Kornmann had no authority to unilaterally discharge Partnership debts. With respect to the counterclaims against the Partnership, the court ruled that breach of contract, fraud, deceit, misrepresentation, negligent misrepresentation, and unjust enrichment could only be asserted against the Trust, the entity that then owned the twin home. Because Welk had not sued the Trust, the court dismissed all of Welk's counterclaims. Accordingly, the court entered judgment in favor of the Partnership for $38,242.96 and denied Welk any relief. Welk now appeals.

*Decision*

[¶8.]     Summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

-3-

any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c). "The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party." *Karst v. Shur-Co.*, 2016 S.D. 35, ¶ 15, 878 N.W.2d 604, 612. "[S]ummary judgment will only be affirmed if there are no genuine issues of material fact and the legal questions have been decided correctly." *Wulf v. Senst*, 2003 S.D. 105, ¶ 19, 669 N.W.2d 135, 142.

[¶9.] Welk argues there were numerous genuine issues of material fact relating to his affirmative defenses and counterclaims. He also argues that the circuit court incorrectly decided the legal questions it addressed. For the reason later explained, we limit our review to the legal questions that were actually decided.

*Affirmative Defenses*

[¶10.] We first examine the legal issue upon which the circuit court granted summary judgment on the affirmative defenses of accord and satisfaction, novation, and substitution.[1] The court concluded that those defenses were unavailable because there was no evidence that all the partners had agreed to discharge the debt and because Kornmann had no authority to unilaterally discharge the note. The court relied on a provision of the partnership agreement providing: "No partner shall, without the consent of all other partners, compromise or release any debt due the partnership except upon full payment thereof . . . ." Welk, however, contends

---

1. Although Welk raised several other affirmative defenses, he does not present argument on them. Accordingly, we do not consider them.

that this provision does not categorically prevent a partner from binding the partnership in that partner's dealings with third parties. We agree.

[¶11.] A partnership agreement governs "relations among the partners and between the partners and the partnership." SDCL 48-7A-103(a). But a partnership agreement generally does not "[r]estrict [the] rights of third parties." SDCL 48-7A-103(b)(10). After all, "[e]ach partner is an agent of the partnership for the purpose of its business." SDCL 48-7A-301(1). Therefore, an act of Kornmann in carrying on the Partnership's business in the ordinary course would generally bind the Partnership.[2] And if Kornmann did enter into an agreement with Welk to discharge the partnership note—a material issue of fact that is disputed—the circuit court erred in concluding that any action on the alleged discharge agreement was barred solely by Kornmann's lack of authority under the partnership agreement.

---

2. An act of the partner in carrying on partnership business binds the partnership "unless the partner had no authority to act for the partnership in the particular matter *and* the person with whom the partner was dealing knew or had received a notification that the partner lacked authority." SDCL 48-7A-301(1) (emphasis added). Additionally, "[a]n act of a partner which is *not apparently* for carrying on in the ordinary course the partnership business or business of the kind carried on by the partnership binds the partnership only if the act was authorized by the other partners." SDCL 48-7A-301(2). It does not appear that these exceptions to the general rule were the basis for the circuit court's decision. The circuit court did not rule that Kornmann lacked authority *and* that Welk knew or had received notification that Kornmann lacked authority. Similarly, the court did not rule that Kornmann had no apparent authority. Summary judgment was granted for the sole reason that the partnership agreement did not give Kornmann authority to discharge the debt without consent of the other partners.

*Counterclaims*

[¶12.]        Welk counterclaimed for breach of contract, fraud, deceit, and misrepresentation. He alleged that if he was found liable on the note, he was entitled to compensation for his labor and services in constructing the twin home. He also alleged that the Partnership was liable for fraud, deceit, and misrepresentation by misleading him into giving up his right to compensation. The circuit court ruled that all such claims could only be asserted against the Trust, which now owns the property and was not made a party to this action.

[¶13.]        The record does not reflect the circuit court's reasoning for concluding that all of the counterclaims were actionable only against the current owner of the property. On appeal, Welk contends that he is not relegated to suing the Trust because his agreement to help construct the twin home was with the Partnership and that all of his dealings and communications were with the Partnership through Kornmann. The Partnership responds that Welk's counterclaims cannot be maintained against the Partnership because the Partnership never owned or had an interest in the twin home.

[¶14.]        The Partnership's contention, however, is based on a material issue of disputed fact that was not considered by the circuit court.[3] Additionally, the parties

---

3.      There is no dispute that the Partnership owned the property when Welk first agreed to help construct the twin home. There is also no dispute that the note was payable to the Partnership and that Welk dealt only with Kornmann, a partner in the Partnership. However, it is disputed whether Kornmann was acting on behalf of the Partnership, the Trust, or himself when he discussed building the twin home with Welk. Additionally, Welk introduced evidence suggesting some commingling of Partnership, Trust, and personal assets.

have not addressed, and we are unable to identify, the legal theory supporting the circuit court's conclusion that none of these counterclaims may be asserted against the Partnership. If Kornmann was acting on behalf of the Partnership, we fail to see how the Partnership is shielded from liability for its own alleged breach of contract, fraud, deceit, and misrepresentation in its dealings with Welk. The Partnership offers no legal theory supporting such a proposition. Rather, it raises a factual argument that the Partnership did not actually construct the twin home. But as previously noted, there are disputed issues of fact about that matter. *See supra* n.3.

[¶15.] With respect to the counterclaim for unjust enrichment, the Partnership asserts that unjust enrichment was "inapplicable" because the *Partnership* was not enriched. We acknowledge that unjust enrichment requires the "retention" of a benefit that is unjust, *Hofeldt v. Mehling*, 2003 S.D. 25, ¶ 15, 658 N.W.2d 783, 788, and that the Trust is now the entity that is retaining the benefits that Welk conferred. But we have not been directed to any undisputed evidence suggesting that the Partnership received no benefit from these transactions, and Welk has identified evidence showing some commingling of Partnership, Trust, and personal assets. At this summary judgment stage of the proceedings, the circuit court erred in concluding that Welk had no actionable claim against the Partnership for unjust enrichment as well as for its own acts in dealing with Welk.

[¶16.] In sum, the circuit court incorrectly resolved two preliminary questions of law (the legal effect of the partnership agreement and the viability of

Welk's counterclaims). It appears that those rulings foreclosed the court's analysis of numerous additional issues of law and fact that both parties have raised in this appeal.[4] This is the summary-judgment stage of the action, and the numerous unaddressed issues must first be addressed by the circuit court. We reverse and remand.

[¶17.] SEVERSON and KERN, Justices, and PFEIFLE, Circuit Court Judge, and WILBUR, Retired Justice, concur.

[¶18.] PFEIFLE, Circuit Court Judge, sitting for GILBERTSON, Chief Justice, disqualified.

---

4. One example illustrates the problem. The circuit court *mentioned* that promissory notes may be required to be in writing. But the court did not rule on that question or the Partnership's appellate assertion that an accord and satisfaction and novation must also be in writing. On appeal, the Partnership contends that a writing is required because Welk is attempting to amend a written note. This contention was not addressed by the circuit court.